**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DONALD WATKINS,

      Defendant-Appellant.

No. 06-3271

(D.C. No. 05-CR-20018-JWL)

(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, EBEL,** and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, ordered submitted without oral argument.

Defendant Donald Watkins entered a conditional plea of guilty to one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), and was sentenced to a term of imprisonment of eighty-seven months.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Watkins now appeals, claiming the district court erred in denying his motion to suppress evidence obtained following a traffic stop. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On October 25, 2005, Drug Enforcement Administration Task Force Officer Eric Jones, acting pursuant to a tip from a confidential informant (CI), responded to a neighborhood in Kansas City, Kansas, where defendant Watkins, who Jones suspected to be a large-scale cocaine dealer, was allegedly in possession of a Ford truck that contained cocaine and a large sum of money. Upon arriving in the neighborhood, Jones observed a truck matching the description given by the CI partially backed into the garage of a residence, and Watkins standing in the garage near the truck. One of Jones' fellow Task Force officers observed Watkins get into the back of the truck bed as if he was loading something. Shortly thereafter, Jones observed Watkins drive the truck out of the garage of the residence and proceed west. Task Force officers followed Watkins to an apartment complex parking lot, where he met a man in a white Buick who retrieved a bag from the passenger window area of Watkins' truck, entered the apartment complex for a brief period, and then returned to Watkins' truck, where he spoke briefly with Watkins. Following this transaction, Jones observed Watkins leave the apartment complex parking lot in the truck and commit a violation of Kan. Stat. Ann. § 8-1548 by crossing both lanes of traffic and then swerving back to the outside lane without using a signal. Jones immediately conveyed information regarding the traffic violation to Officer Pat Callahan

-2-

with the Kansas City, Kansas Police Department, and asked Callahan to initiate a stop of Watkins' truck.

Callahan complied with Jones' request and conducted a traffic stop of Watkins' truck. During the course of the stop, Watkins provided Callahan with an invalid Texas driver's license. At the conclusion of the stop, Watkins verbally consented to a canine sniff of the exterior of his truck. During the ensuing canine sniff, the police drug dog alerted to the rear bed of the truck. Callahan notified Jones of the alert, and Jones and other Task Force officers responded to the scene of the stop. Upon examining the exterior of Watkins' truck and, with Watkins' consent, the cab of the truck, Task Force officers determined there was a hidden compartment in the truck.

Watkins' truck was towed to a secure location and a search warrant was obtained and executed the following day, October 26, 2005. A hidden compartment was located under the bed of the truck. The compartment contained seven vacuum-sealed bricks of cocaine and $33,900 in cash. Watkins' fingerprints were matched to fingerprints recovered from the cocaine packaging.

On November 9, 2005, a federal grand jury indicted Watkins on one count of possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). Watkins moved to suppress the cocaine and currency seized from his truck following the traffic stop. The district court, after conducting an evidentiary hearing, denied Watkins' motion. Thereafter, Watkins entered a conditional plea of guilty to the single count alleged in the indictment, reserving his right to appeal the

district court's denial of his motion to suppress. On July 10, 2006, the district court sentenced Watkins to a term of imprisonment of eighty-seven months.

II.

Watkins contends on appeal that the district court erred in denying his motion to suppress. "When reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we review the evidence in the light most favorable to the government." United States v. Patterson, 472 F.3d 767, 775 (10th Cir. 2006) (internal quotation marks omitted). "[W]e review de novo the ultimate determination of reasonableness under the Fourth Amendment because that is a legal conclusion." Id. (internal quotation marks omitted). "The defendant bears the burden of establishing a Fourth Amendment violation." Id.

Watkins complains, as he did below, that the traffic stop was violative of the Fourth Amendment because Callahan, the officer who conducted the stop, did not personally observe Watkins commit any traffic violation. We readily reject Watkins' argument. To be sure, it is necessary for a detaining officer to "have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile." United States v. Cervine, 347 F.3d 865, 869 (10th Cir. 2003) (internal quotation marks omitted). It is not, however, necessary that such objectively reasonable articulable suspicion rest solely on the knowledge of the detaining officer. Rather, the collective knowledge doctrine (sometimes referred to as the fellow officer rule) allows the objectively reasonable articulable suspicion to be based on the totality of

-4-

the circumstances and "the collective knowledge of all the officers involved." United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997); see United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006) (holding that collective knowledge doctrine applies to determination of reasonable suspicion); United States v. Miranda-Guerena, 445 F.3d 1233, 1237 (9th Cir. 2006) ("The Fourth Amendment does not require the traffic violation to occur in the officer's presence."); Cervine, 347 F.3d at 871 (applying collective knowledge doctrine to reasonable suspicion determination). Although Watkins argues that the doctrine should not be applied "in cases involving minor traffic stops," Aplt. Br. at 15, he cites no case that supports such a proposition, and our own independent research has produced none. Moreover, we are not persuaded that such a distinction is justifiable. Applied here, the collective knowledge doctrine clearly afforded Callahan, who had directly communicated with Jones regarding Jones' observation of the traffic violation, with reasonable suspicion to stop Watkins' truck. See Patterson, 472 F.3d at 775 (holding that observation of a traffic violation provides reasonable suspicion for a traffic stop). Thus, there was no Fourth Amendment violation, and the district court did not err in denying Watkins' motion to suppress.[1]

---

[1] In his appellate brief, Watkins refers, in passing, to Kan. Stat. Ann. § 22-2401, which governs the circumstances under which a law enforcement officer in the State of Kansas may arrest a person. We fail to see the relevance of this statute. To begin with, Watkins is challenging only the initial traffic stop, not his subsequent arrest. Further, even if the statute were somehow applicable to the traffic stop, it could not "raise the bar for what constitutes a reasonable seizure" under the Fourth Amendment. Miranda-Guerena, 445 F.3d at 1237; see Whren v. United States, 517 U.S. 806, 815 (1996) (rejecting a proposed standard for stops based on police enforcement practices because

(continued...)

AFFIRMED.

                                        Entered for the Court


                                        Mary Beck Briscoe
                                        Circuit Judge

---

[1](...continued)
such practices "vary from place to place and from time to time").

-6-