FILED
United States Court of Appeals
Tenth Circuit

**January 18, 2011**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

STEPHEN WILKINSON,

        Defendant - Appellant.

No. 10-6024

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:09-CR-00154-C-1)**

---

Submitted on the briefs:

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

Sanford C. Coats, United States Attorney, Jonathon E. Boatman and David P. Petermann, Assistant United States Attorneys, Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

      After a bench trial in the United States District Court for the Western

District of Oklahoma, Defendant Stephen Wilkinson Jr. was convicted of

possessing with intent to distribute five grams or more of a mixture containing cocaine base (crack). *See* 21 U.S.C. § 841(a)(1). Police officers found the cocaine in his truck after a traffic stop by an officer acting at the request of a fellow officer who had observed a license-tag violation. Defendant appeals the district court's denial of his motion to suppress the drugs as fruit of an illegal stop. We have jurisdiction under 28 U.S.C. § 1291 and affirm. The stop was proper because the "collective knowledge" doctrine—under which the legality of the detention of a suspect by an officer can be supported by information possessed by a fellow officer who requests the detention, even if the requesting officer does not communicate the information to the other officer—applies to traffic stops for misdemeanors as well as stops for felonies.

## I.    BACKGROUND

On April 10, 2009, Lieutenant Todd Palmer of the Lawton Police Department received a tip from a reliable informant that a black male would be bringing crack cocaine into Lawton from Texas in a small red pickup. The informant gave Palmer the area of town and the time of day to look for the vehicle. Palmer and his partner were in the area at the given time and saw a red pickup. Palmer observed that its paper license tag, which the truck had in place of a license plate, was unlawfully covered in plastic. Because Palmer and his partner were in an unmarked car, Palmer requested that a patrol unit stop the truck.

Officer Timothy Poff received Palmer's radio request, although he was not provided any details regarding the grounds for the stop. As Poff followed the red pickup into a residential area, he noticed that the license tag looked altered or wrinkled; it was harder to read the number than it usually is on an Oklahoma paper tag. He did not notice that the tag was covered in plastic, but thought that its weathered appearance meant that it had been on the car for longer than 30 days, the amount of time for which paper tags are valid. He could not read the tag's expiration date from his position about a car-length behind the truck because the expiration date was much smaller than normal for a paper tag. Poff turned on his emergency lights and pulled the truck over.

Once the truck came to a stop, Poff saw the driver, Defendant, reaching for something by the center console inside the truck. Because he knew that Palmer generally targeted violent drug offenders, Poff was concerned for his safety and decided to deal with Defendant before examining the tag further. He obtained Defendant's driver's license and returned to his car to check it.

About two minutes after Poff's initial contact with Defendant, before he had even returned to his squad car, a canine unit arrived. The dog alerted on the truck. Defendant was asked to get out of his vehicle, but while he was being patted down, he attempted to escape. After he was caught, a search of the truck revealed 25 grams of crack cocaine.

At the evidentiary hearing on Defendant's motion to suppress, the district court ruled that the stop and search were lawful. Defendant was convicted in a bench trial on stipulated facts. He appeals the denial of his suppression motion.

## II.    DISCUSSION

"We review de novo the reasonableness of a search or seizure under the Fourth Amendment. The credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citation omitted). "We conduct a two-step inquiry when determining the constitutionality of a traffic stop, considering first whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place." *See United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir. 2005). Defendant argues that Poff did not have reasonable suspicion to stop him and that the stop exceeded the permissible scope of a traffic stop. (He does not challenge on other grounds the dog sniff of the car or any subsequent action by the police. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2003) ("[T]he use of a well-trained narcotics-detection dog . . . during a lawful traffic stop[] generally does not implicate legitimate privacy interests.")). We address each argument in turn.

### A.    Reasonable Suspicion for the Stop

A traffic stop is valid under the Fourth Amendment if there is reasonable suspicion that the motorist violated a traffic or equipment regulation. *See United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007). The district court provided two alternative bases for reasonable suspicion: (1) Poff could rely on Palmer's observation that the license tag was covered in plastic and (2) Poff himself had reasonable suspicion to believe that the truck's tag was forged. We affirm on the first basis, so we need not address the second.

It is undisputed on appeal that the pickup's license plate was covered in plastic and that the plastic cover violated Oklahoma law.[1] Also, Defendant acknowledges that this court has recognized the collective-knowledge doctrine (also called the "fellow officer" rule). Under that doctrine, "[w]hen law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert—rather than the officer who conducted the challenged action—had the requisite level of suspicion." *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1227 (10th Cir. 2008). Because Palmer had seen plastic covering the pickup's paper tag, thereby establishing reasonable suspicion for the stop, and told Poff to stop the

---

[1] Oklahoma law provides: "The operation of a vehicle in this state, regardless of where such vehicle is registered, upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation . . . ." Okla. Stat. tit. 47, § 1113(A)(2) (2008).

truck, it does not matter that Poff did not see the plastic himself before making the stop.

Defendant argues, however, that the collective-knowledge doctrine should not be applied here, because Oklahoma law allows an officer to arrest someone for a misdemeanor only if committed in the officer's presence. *See* Okla. Stat. tit. 22, § 196 (2003). But this argument is based on faulty factual and legal premises. Factually, we note that the offense—driving the vehicle when the tag is covered in plastic—was committed in Poff's presence. More important is the legal flaw. The legality of a detention under the Fourth Amendment is not dependent on state law governing detentions. *See United States v. Gonzales*, 535 F.3d 1174, 1182 (10th Cir. 2008) (constitutional test for determining the validity of a traffic stop does not require examination of state law). In *Virginia v. Moore*, 553 U.S. 164, 166 (2008), local police officers arrested Moore for the misdemeanor offense of driving on a suspended license. It was uncontested that under state law the officers had no authority to arrest Moore but should have only issued a summons. *See id.* at 167. The Supreme Court, however, held that the arrest did not offend the Fourth Amendment. *See id.* at 176. As the Court wrote, "A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.* at 174.

In addition, there is no reason independent of the Oklahoma statute to limit the collective-knowledge doctrine to felonies. The doctrine was recognized (although not so labeled) by the Supreme Court in *United States v. Hensley*, 469 U.S. 221 (1985), which upheld the validity of a stop based on a teletyped flyer. (Although the flyer in that case was issued by another police department rather than by officers in the same department, that makes no difference in the analysis.) The flyer did not provide sufficient information to justify a stop, but the Court held that the stop was permissible so long as the "flyer . . . ha[d] been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person ha[d] committed an offense." *Id.* at 232. The Court recognized that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id.* at 231 (internal quotation marks omitted). And it justified the doctrine on the ground that "[t]he law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal." *Id.* at 232. Little, if any, additional individual freedom would result from requiring officers to set forth their grounds for reasonable suspicion or probable cause in their communications with other officers.

This balance of interests—the substantial advantage to law enforcement in facilitating their communications outweighing the minimal protection to citizens from requiring detailed messages between officers—applies equally when the offense for which there is reasonable suspicion is a misdemeanor rather than a felony. Moreover, even if the balance were not as favorable to law enforcement in the context of a misdemeanor, the same rule should apply. The rationale for applying the same detention rule for misdemeanors as for felonies is set forth in *Moore*:

> In determining what is reasonable under the Fourth Amendment, we have given great weight to the essential interest in readily administrable rules. In *Atwater* [*v. City of Lago Vista*, 532 U.S. 318, 347 (2001)] we acknowledged that nuanced judgments about the need for warrantless arrest were desirable, but we nonetheless declined to limit to felonies and disturbances of the peace the Fourth Amendment rule allowing arrest based on probable cause to believe a law has been broken in the presence of the arresting officer. The rule extends even to minor misdemeanors, we concluded, because of the need for a bright-line constitutional standard.

553 U.S. at 175 (citations and internal quotation marks omitted).

It is therefore unremarkable that courts have applied the collective-knowledge doctrine to stops for misdemeanors without any discussion about whether the doctrine applies in that context. *See Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 521, 524 n.2 (7th Cir. 2001) (knowledge of officers who ordered arrest was imputed to arresting officers in public-indecency case); *City of Maumee v. Weisner*, 720 N.E.2d 507, 509–11 (Ohio 1999) (DUI in

violation of municipal ordinance); *State v. Pratt*, 951 P.2d 37, 43–44 (Mont. 1997) (DUI); *State v. Myers*, 490 So. 2d 700, 701–03 (La. Ct. App. 1986) (hitting a traffic sign). And the two opinions that we have found that do consider whether the collective-knowledge doctrine applies to misdemeanors both hold that it does. *See United States v. Watkins*, 243 F. App'x 356, 358 (10th Cir. 2007) (unpublished)[2]; *State v. Boatman*, 901 So. 2d 222, 223–24 (Fla. Dist. Ct. App. 2005). We hold that the collective-knowledge doctrine is not limited to felonies and applies in this case. Poff's stop of Defendant's pickup was permissible because Palmer, who requested the stop, had reasonable suspicion of an equipment violation.

Defendant argues further that the district court's analysis should have taken into account that the primary motive of the police was to investigate drug transportation, not the traffic violation. At the suppression hearing the assistant United States attorney conceded that "there's no doubt that the stop here was pretextual in nature, that law enforcement in the City of Lawton clearly felt that [Defendant] was doing other things that day." R., Vol. 3 at 52. But the Fourth Amendment reasonableness of traffic stops does not depend on the actual motives of the officer. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (under the reasonable-suspicion standard "an officer's actual motivations or subjective beliefs and

---

[2]As an unpublished opinion, *Watkins* is not binding precedent.

intentions are, quite simply, irrelevant" (internal quotation marks omitted)).  We agree that the district court could have considered the officers' motivations in assessing their credibility.  But evidence of their motives did not compel the court to disbelieve them.  It was not clearly erroneous for the court to believe the officers' accounts of their observations and actions.

### B.     Duration of the Stop

Defendant's second argument is that the duration of the stop was not reasonably related in scope to Poff's reasons for it.  He contends that Poff could have determined whether the tag was valid immediately after he had stopped the vehicle and then let Defendant drive on.  *See United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006) (officer who had stopped a car because he could not read its license tag had no ground to continue to detain the driver once he could read the tag and determine its validity); *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994) (same).  He asserts that Poff proceeded directly to Defendant only because Palmer had asked for the truck to be stopped.

But *Edgerton* and *McSwain* are readily distinguishable.  In both cases the officer's observations after the stop revealed that there was no equipment violation.  Here, in contrast, observation by Poff would have revealed the plastic cover, establishing a violation and reasonable suspicion (even probable cause) to continue the stop and issue Defendant a warning or a citation.  *See United States*

-10-

*v. Eckhart*, 569 F.3d 1263, 1273 (10th Cir. 2009) (license-plate violation confirmed by officer after stop).

## III.   CONCLUSION

We AFFIRM the district court's denial of the motion to suppress.