2013 OK CR 12

**William Henry JOHNSON, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–2012–718.**

Court of Criminal Appeals of Oklahoma.

Aug. 1, 2013.

Keith J. Nedwick, Heather Strohmeyer, Norman, OK, for defendant at trial and on appeal.

Dennis A. Smith, District Attorney, Shelley Varnell, Assistant District Attorney, Sayre, OK, for the State at trial.

E. Scott Pruitt, Attorney General of Oklahoma, Judy King, Assistant Attorney General, Oklahoma City, OK, for the State on appeal.

### OPINION

LUMPKIN, Judge.

¶1 Appellant William Henry Johnson was tried by jury and convicted of Trafficking in Illegal Drugs (63 O.S. Supp.2007 § 2–415) in the District Court of Beckham County, Case No. CF–2011–16. The jury recommended as punishment eight (8) years imprisonment and a $50,000.00 fine. The trial court sentenced accordingly. It is from this judgment and sentence that Appellant appeals.

¶2 Appellant raises the following propositions of error in support of his appeal:

I. The ordinance Appellant is alleged to have violated did not require him to use a turn signal under the circumstances. Therefore, no violation occurred and the stop was unconstitutional.

II. Officers prolonged the detention of Appellant well beyond the time necessary to effectuate the purpose of the stop. Because Officer Buckley was unable to articulate reasonable suspicion to justify the delay, the detention was unreasonable and violated Appellant's Fourth Amendment rights.

III. The State committed prosecutorial misconduct by making improper statements during closing argument which highly prejudiced Appellant and the trial court's abuse of discretion in denying Appellant's request for a mistrial require a reversal.

¶3 After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that neither reversal nor modification of sentence is warranted under the law and the evidence.

¶4 On January 8, 2011, Officer Buckley, Elk City Police Department, was searching local motel parking lots for a truck involved in a vandalism incident unrelated to this case. In one of these parking lots, Officer Buckley observed Appellant standing beside a high-end Chrysler Premium 300 model car. Although the officer observed Appellant acting suspiciously, he drove past him on his way to check another parking lot. Later, as Officer Buckley traveled eastbound on Highway 66, approaching Highway 34 he encountered the Chrysler traveling west on the Highway 66 access road toward Highway 34. The Chrysler stopped at the intersection of Highway 66 and Highway 34, and then turned left onto Highway 34 without using a turn signal. The Chrysler turned left again to travel east on Highway 66. The Chrysler was now in front of Officer Buckley who had stopped at a red light at the intersection of Highways 66 & 34. When the intersection cleared, the officer drove through, got behind the Chrysler and pulled it over.

¶5 Appellant was alone in the Chrysler. Officer Buckley asked for his driver's license and proof of insurance. Appellant was very nervous. His hands were shaking "almost uncontrollably" and he had sweat dripping down his face. He would not make eye contact with the officer. Appellant gave the officer his driver's license and a rental car agreement. Officer Buckley told Appellant he had stopped him because he failed to signal his left turn and he was going to give him a warning.

¶6 Officer Buckley returned to his patrol car. Concerned about Appellant's nervousness and the fact that he did not relax when told he was only receiving a warning, Buckley decided to ask for assistance from an officer more experienced in working the highways. The first officer he called was unavailable but his second call brought Agent Goodman, a member of the District II Drug Task Force and certified K–9 handler. Agent Goodman was close by and while on his way, Officer Buckley radioed dispatch to check Appellant's license. When Goodman arrived he and Buckley determined that

there was not probable cause or reasonable suspicion to detain Appellant further. Upon receiving the necessary information from dispatch, Officer Buckley completed the warning citation, returned to Appellant's car, handed him the warning citation, his driver's license and rental agreement, shook his hand and told him he was free to go.

¶ 7 Appellant's car was running, but he did not immediately drive away. Officer Buckley paused, then asked Appellant if he could ask him a few questions. Appellant replied, "yes." This consensual encounter led to Agent Goodman retrieving his drug dog and running him around the perimeter of the car. The dog alerted on the trunk of the car. A subsequent search yielded five pieces of matching luggage. Three of the pieces contained bundles of vacuum sealed "space saver" bags, which contained compressed bricks of marijuana. In addition, there was one plastic bag containing a small amount of loose hydroponic marijuana—a higher grade marijuana than in the other bags. The bags were coated with dishwashing liquid—commonly used by drug traffickers in an attempt to mask the odor of the drugs. In total, there were 54 bricks of marijuana weighing a total of 95 pounds. Officers also found a wadded up receipt from a California Walmart for the purchase, four days earlier, of the luggage, vacuum sealed storage bags and dishwashing liquid. The receipt was signed by Appellant.

¶ 8 In Proposition I, we find the trial court did not abuse its discretion in denying the motion to suppress as the record supports a finding that Officer Buckley's initial stop of Appellant was legal. *See Gomez v. State,* 2007 OK CR 33, ¶ 5, 168 P.3d 1139, 1141; *State v. Goins,* 2004 OK CR 5, ¶ 7, 84 P.3d 767, 769 (both cases review a trial court's ruling on a suppression motion for an abuse of discretion).

¶ 9 The particular provision of the Elk City Highway Traffic Code, Chapter 22, Article I, is identical to 47 O.S.2011, § 11–604. The statute provides in pertinent part:

A. No person shall turn a vehicle at an intersection, a public or private road, or a driveway, unless the vehicle is in proper position upon the roadway as required in Section 11–601 of this title, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. **No person shall so turn any vehicle without giving an appropriate signal** as provided in subsection B of this section, **in the event any other traffic may be affected by such movement.**

B. A signal of intention to turn right or left as required by law shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

(emphasis added).

¶ 10 A fundamental rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. *Coddington v. State,* 2006 OK CR 34, ¶ 56, 142 P.3d 437, 452; *State v. Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d 32, 33. "A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." *Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d at 33. Statutes are to be construed according to the plain and ordinary meaning of their language. *Wallace v. State,* 1997 OK CR 18, ¶ 4, 935 P.2d 366, 369–370. "A statute must be held to mean what it plainly expresses and no room is left for construction and interpretation where the language employed is clear and unambiguous." *Id.* quoting *Abshire v. State,* 1976 OK CR 136, ¶ 6, 551 P.2d 273, 274.

¶ 11 If the purpose of § 11–604 is to prevent traffic accidents, then the term "affected" must be read somewhat broadly. The Legislature's choice of the phrase "may be affected" as opposed to "is affected," "will be affected," or "most likely will be affected" implies an intent to provide § 11–604 with a broad reach. A traffic law that punishes only those who actually cause accidents through their misconduct does little to promote prudent driving. We believe that the apparent purpose of 47 O.S.2011, § 11–604 is for drivers to notify other motorists in the immediate area of their intention to make a turn or lane change, in order to prevent

traffic accidents. We find that the phrase used in § 11–604(A) "in the event any other traffic may be affected by such movement" to mean a driver must engage a turn signal "when there is a *reasonable possibility* that other traffic may be affected." *United States v. Burciaga,* 687 F.3d 1229, 1233 (10th Cir.2012) *quoting State v. Hubble,* 146 N.M. 70, 206 P.3d 579, 584 (2009) (emphasis in original).

¶ 12 In the present case, Officer Buckley testified there were other cars on the road at the time Appellant failed to signal his left turn and that Appellant's failure to signal his turn affected the other traffic. The State does not need to prove any actual effect on other traffic in order to prove a violation of § 11–604. The evidence in this case was sufficient to show a reasonable possibility that the other traffic may have been affected by Appellant's failure to signal his left turn. This traffic violation provided sufficient probable cause for Officer Buckley to legally stop Appellant's vehicle. *See Dufries v. State,* 2006 OK CR 13, ¶ 8, 133 P.3d 887, 889 *citing to Whren v. United States,* 517 U.S. 806, 809–810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (in terms of the initial justification for a traffic stop, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). *See also McGaughey v. State,* 2001 OK CR 33, ¶ 25, 37 P.3d 130, 136–137 n. 21 *citing United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir.1995), (en banc) ("a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."); *Gomez,* 2007 OK CR 33, ¶ 6, 168 P.3d at 1142 (observation of traffic violation constituted sufficient cause to stop defendant). Accordingly, Proposition I is denied.

¶ 13 In Proposition II, we find the trial court did not abuse its discretion in denying the motion to suppress as the traffic stop was not unreasonable in scope or duration. "The scope and duration of [a traffic stop] must be related to the stop and must last no longer than is necessary to effectuate the stop's purpose." *Seabolt v. State,* 2006 OK CR 50, ¶ 6, 152 P.3d 235, 237 *citing Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). While "unwilling to impose a rigid time limitation on the duration of a traffic stop", the *Seabolt* Court acknowledged that in "a routine traffic stop a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation," *Seabolt,* 2006 OK CR 50, ¶ 9, n. 5, 152 P.3d at 238, n. 5 *citing U.S. v. Gregoire,* 425 F.3d 872, 879 (10th Cir.2005).

¶ 14 Officer Buckley stopped Appellant at approximately 11:12 a.m.[1] He asked Appellant for his license and insurance, told him why he had been stopped and walked back to his patrol car to call in the license. Appellant's extreme nervous behavior and failure to relax after being assured he was only getting a warning, caused the relatively inexperienced officer (he had only been a police officer for approximately two years) to find it prudent to call for the assistance of a more experienced officer. Before he called dispatch to check on Appellant's license, Officer Buckley called Trooper Splawn, but he was unavailable. At approximately 11:16 a.m., Buckley called Agent Goodman, who agreed to help. Officer Buckley then called dispatch. Officer Buckley testified it took approximately five to seven minutes for Agent Goodman to arrive during which time he waited on information from dispatch. Also during this time, Officer Buckley observed Appellant to be moving around on the driver's side of his car. The officer approached Appellant and told him it would be a few more minutes before he heard from dispatch. Officer Buckley returned to his patrol car and spoke with Agent Goodman who had arrived by this time. As Officer Buckley continued to wait on the information from dispatch, he talked with Agent Goodman about whether he had probable cause or reasonable suspicion to detain Appellant further. Upon deciding there was insufficient evi-

---

1. The times testified to are approximations and it is evident not all of the clocks were synchronized. The actual warning reflects a time of 11:10 a.m. (Defendant's Exhibit 4).

dence to prolong the detention, and upon receiving the necessary information from dispatch, Officer Buckley finished writing out the citation, walked back to Appellant's car, returned his license and rental agreement, gave him the warning citation and told Appellant he was free to go. The record does not reflect exactly what time Officer Buckley returned Appellant's information to him. However, Agent Goodman testified it was approximately 11:20 a.m., during the consensual encounter, by the time he deployed his drug dog at the scene.

¶ 15 We find the few minutes Officer Buckley took to call for assistance served a legitimate purpose and created only a minimal intrusion on Appellant's liberty interest under the totality of the circumstance. *See U.S. v. Sharpe*, 470 U.S. 675, 687, n. 5, 105 S.Ct. 1568, 1576, n. 5, 84 L.Ed.2d 605 (1985) (it was appropriate for officer lacking experience and training to hold detained motorist for a brief period pending arrival of more experienced officer). *See also Storm v. State*, 1987 OK CR 82, ¶ 6, 736 P.2d 1000, 1001 (defendant legally stopped for a traffic offense and was only detained for an additional ten to fifteen minutes beyond the time required to issue the citation). The remainder of the traffic stop was spent waiting on information from dispatch—a circumstance necessary to complete the legitimate purpose of the stop. Under the facts and circumstances of this case, the traffic stop was not unreasonable in scope or duration. Proposition II is therefore denied.

¶ 16 In Proposition III, we find Appellant was not denied a fair trial by prosecutorial misconduct. Both instances of misconduct raised on appeal were met with contemporaneous objections by defense counsel. In both instances, the trial court sustained the objections, striking the comment in one instance. The court's action cured any error. *Hanson v. State*, 2009 OK CR 13, ¶ 19, 206 P.3d 1020. Proposition III is denied.

¶ 17 Accordingly, this appeal is denied.

### DECISION

¶ 18 The Judgment and Sentence is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J., SMITH, V.P.J., C. JOHNSON and A. JOHNSON, JJ.: concur.