2014 OK CR 8

**The STATE of Oklahoma, Appellant,**

**v.**

**Wade Matthew IVEN, Appellee.**

**No. S–2013–824.**

Court of Criminal Appeals of Oklahoma.

July 25, 2014.

Eric N. Edwards, Enid, OK, counsel for defendant at trial.

Barry Retherford, Assistant District Attorney, Blaine County District Attorney's Office, Blaine County Courthouse, Watonga, OK, counsel for appellant/state at trial and appeal.

James L. Hankins, Timberbrooke Business Center, Edmond, OK, counsel for appellee on appeal.

### SUMMARY OPINION

SMITH, Vice Presiding Judge.

¶ 1 Wade Matthew Iven is charged with one count of Kidnapping in violation of 21 O.S.2011, § 741 (Count 1), one count of Endeavoring to Commit an Act of Violence in violation of 21 O.S.2011, § 1378 (Count 2), Assault with a Dangerous Weapon in violation of 21 O.S.2011, § 645 (Count 3), and Domestic Abuse in violation of 21 O.S.2011, § 644(C) (Count 4), in the District Court of Blaine County, Case No. CF–2012–84. Iven

was bound over at preliminary hearing. Thereafter, Iven filed a Motion to Suppress, and to Quash and/or Set Aside Information. After a hearing, the Honorable Paul K. Woodward granted the defendant's motion to suppress. The State appeals raising three propositions.

I. A POLICE OFFICER MAY RELY ON THE INSTRUCTIONS OF ANOTHER OFFICER IN STOPPING A VEHICLE, AND EFFECTUATING AN ARREST, EVEN THOUGH THE OFFICER CONDUCTING THE STOP AND ARREST IS NOT PRIVY TO ALL OF THE FACTS AMOUNTING TO PROBABLE CAUSE FOR THE ARREST.

II. THE "COLLECTIVE KNOWLEDGE DOCTRINE" APPLIES TO MISDEMEANOR ARRESTS, INCLUDING ARRESTS FOR DOMESTIC ABUSE-ASSAULT & BATTERY, AS EQUALLY AS FELONY ARRESTS.

III. WHERE A MOTION TO SUPPRESS EVIDENCE IS INTERPOSED BY THE APPELLEE, THE BURDEN OF PROOF IS ON THE PROPONENT OF THE MOTION.

¶ 2 The charges against Iven stem from his arrest for a single misdemeanor count of domestic abuse. Although the record is sparse, it is sufficient to address the very narrow question presented. Deputy Craig Smith of the Blaine County Sheriff's department was dispatched to a call of an on-going domestic dispute. O.R. 34–35. Also responding to the call were Deputy Lonnie Spiva and Officer Buddy King from the Okeene Police Department. O.R. 38, 84. Within ten minutes of receiving the call, Deputy Smith and Officer King arrived in the area and located the alleged victim, B.H., hiding in a trash trailer near the airport.

¶ 3 Still visibly shaken and crying, B.H. described being involved in an altercation with Iven as they were driving down the road. They had been in a dating relationship. During the altercation, she managed to jump from the moving vehicle and run into a field. Deputy Smith personally observed recent physical injuries to B.H. including blood on her nose and under her eye, swelling to the left side of her mouth, and bruises and abrasions on her arms and legs. Deputy Spiva did not respond to the victim's location and, instead, attempted to locate Iven. Iven

was found near a car wash in Okeene and was arrested for domestic abuse approximately one hour after the initial call was received by police. The arrest was made at the request of Deputy Smith and based on information known to him. Further investigation after the arrest led to additional charges.

¶ 4 Iven filed a motion to suppress arguing, *inter alia,* that because Deputy Spiva neither personally observed the recent injuries to the alleged victim nor was he aware of the existence of such injuries through information communicated by another officer, Iven's arrest for domestic abuse was invalid under Section 196(6) of Title 22. The State urged that the collective knowledge doctrine could be applied to justify Iven's warrantless arrest for domestic abuse. In response, Iven did not dispute the general applicability of the doctrine, but argued that because information known to Deputy Smith was not actually communicated to Deputy Spiva, the arrest was unlawful.

¶ 5 The court found that Deputy Smith did personally observe recent physical injury to the alleged victim. Although there was some dispute as to whether Deputy Smith actually relayed information concerning the injury to Deputy Spiva, the trial court made a factual finding that Deputy Smith did not do so. Because this information was not communicated, the trial court found the collective knowledge doctrine could not operate to justify the arrest under Section 196(6). Concluding that Iven's arrest was unlawful, the court suppressed evidence derived therefrom.

¶ 6 The State appeals under the authority of 22 O.S.2011, § 1053(5) and asserts that the suppressed evidence forms a substantial part of the State's evidence and the State's ability to prosecute Iven is substantially impaired absent the suppressed evidence. Appellate review is, therefore, in the best interests of justice. *State v. Sayerwinnie,* 2007 OK CR 11, ¶ 6, 157 P.3d 137, 139. This Court reviews the trial court's ruling on Iven's motion to suppress for an abuse of discretion. *State v. Ramos,* 2013 OK CR 3, ¶ 14, 297 P.3d 1251, 1254. An abuse of discretion is any unreasonable or arbitrary ac-

tion taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. *Neloms v. State,* 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. Here, the trial court abused its discretion and the State's request for relief should be granted.

¶ 7 Before reaching the merits of the legality of Iven's arrest, we must first address two preliminary questions; the first being which party bears the burden of establishing the legality of a misdemeanor arrest challenged, not on constitutional grounds, but under Section 196 of Title 22. In Proposition III, the State contends that the trial court erroneously placed the burden on the State to demonstrate legality of the warrantless arrest.

¶ 8 In the context of a constitutional challenge to the legality of a warrantless search or seizure, we have recognized that the State bears the burden to establish that the search or seizure was lawful. *Delgarza–Alzaga v. State,* 2001 OK CR 30, ¶ 4, 36 P.3d 454, 455; *State v. McLemore,* 1977 OK CR 24, ¶ 8, 561 P.2d 1367, 1369. The burden lies with the State at a suppression hearing because warrantless searches and seizures are presumptively unreasonable under the State and Federal Constitutions. *Delgarza–Alzaga,* 2001 OK CR 30, ¶ 4, 36 P.3d at 455; *Blackburn v. State,* 1978 OK CR 24, ¶¶ 21, 23, 575 P.2d 638, 642.

¶ 9 Our decisions in the area of constitutional challenges do not necessarily answer the question in the present case. Here we must determine who bears the burden when the lawfulness of a warrantless misdemeanor arrest is challenged under statute. This is a question we have not squarely addressed. Section 196 of Title 22 governs warrantless arrests and strictly limits the circumstances under which a warrantless misdemeanor arrest is permitted. 22 O.S. 2011, § 196. Absent one of the enumerated exceptions, a warrant must be obtained to arrest a person for a misdemeanor offense. In this manner, Section 196 operates much like constitutional guarantees which create a preference for a judicial determination of

probable cause. Because Section 196, provides only limited exceptions authorizing a warrantless misdemeanor arrest, the burden should be on the State to prove that a challenged arrest falls within a statutory exception. *C.f., Davis v. State*, 1979 OK CR 40, ¶ 4, 594 P.2d 1229, 1231 (noting that it was the State's burden to prove compliance with statutorily mandated maintenance requirements for a breathalyzer). We therefore conclude that the trial court properly placed the burden on the State to justify the warrantless misdemeanor arrest.

■ ¶ 10 As a second preliminary matter, we must determine whether the "collective knowledge" doctrine can be applied in the present case. The rule for imputing knowledge from one officer to another is known variously as the "collective-knowledge" doctrine or the "fellow-officer" rule. *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir.2008). Generally stated, the doctrine allows an officer to stop, arrest, or search a suspect in limited circumstances, even if the officer does not have firsthand knowledge of all of the facts that amount to reasonable suspicion or probable cause to justify the action. This principle derives from the recognition that law enforcement officers must be permitted to work collectively in the performance of their duties and act on directions and information given by one officer to another. *United States v. Duval*, 742 F.3d 246, 253 (6th Cir.2014).

¶ 11 In the proceedings below, the parties and the trial court implicitly believed that, as a general principle, the collective knowledge doctrine could apply in determining the validity of an arrest claimed to be unlawful under statute. In this appeal, the State notes that the Tenth Circuit in *United States v. Wilkinson*, 633 F.3d 938 (10th Cir.2011) extended the application of the doctrine to stops for misdemeanor offenses and argues that the trial court incorrectly applied the doctrine in the case at bar. However, as an alternative basis to uphold the court's suppression of evidence, Iven argues for the first time on appeal, that the doctrine cannot apply to the statutory challenge at issue here. He asserts that the collective knowledge doctrine is a product of constitutional challenges

brought under the Fourth Amendment and states are free to impose greater restrictions on police conduct. He argues that the Legislature elected to impose such a greater restriction by the plain language of Section 196(6). Although not previously raised, we must consider this question as a preliminary matter.

¶ 12 In relevant part, Section 196 provides that a peace officer may, without a warrant, arrest a person "[a]nywhere, including a place of residence of the person, if the peace officer has probable cause to believe the person within the preceding seventy-two (72) hours has committed an act of domestic abuse as defined by Section 60.1 of this title, although the assault did not take place in the presence of the peace officer. *A peace officer may not arrest a person pursuant to this section without first observing a recent physical injury to, or an impairment of the physical condition of, the alleged victim.*" 22 O.S.2011, § 196(6) (emphasis added); *see also* 22 O.S.2011, § 60.16(B)(1). He claims the plain language of the statute requires the arresting officer to personally observe the injury or impairment and, thus, excludes the possibility that the collective knowledge doctrine might apply.

¶ 13 It is a fundamental principle in statutory construction that we must ascertain and give effect to the intention of the Legislature. *State v. Stice*, 2012 OK CR 14, ¶ 11, 288 P.3d 247, 250. Legislative intent is to be determined first by the plain and ordinary language of the statute. *Johnson v. State*, 2013 OK CR 12, ¶ 10, 308 P.3d 1053, 1055. "A statute should be given a construction according to the fair import of its words taken in their usual sense, in conjunction with the context, and with reference to the purpose of the provision." *Id.* (citation omitted). In determining legislative intent, we may also look to other statutes on the same or relative subjects as well as the natural or absurd consequences of any particular interpretation. *Stice*, 2012 OK CR 14, ¶ 11, 288 P.3d at 250.

■ ¶ 14 Contrary to Iven's assertion, the plain language of Section 196(6) contains no requirement that the arresting officer personally observe the recent injury or impair-

ment to the alleged victim. To be sure, we must presume that the Legislature was aware of our decisions and contemplated them in amending the statute. *Rogers v. Bailey,* 2011 OK 69, ¶ 13, 261 P.3d 1150, 1156. Long before Section 196(6) was adopted, in *Holt v. State,* 1973 OK CR 38, 506 P.2d 561, we acknowledged that the collective knowledge doctrine was a firmly rooted principle of law. *Holt,* 1973 OK CR 38, ¶ 14, 506 P.2d at 566. Had the Legislature intended to reject the application of the doctrine, it could have easily done so by imposing a requirement that the arresting officer personally observe the injury or impairment to the alleged victim. It did not do so and we will not read into a statute a requirement that is not there. *Dawkins v. State,* 2011 OK CR 1, ¶ 10, 252 P.3d 214, 218. More significantly, Iven's position ignores the language of Section 60.16 of Title 22.

¶ 15 In addition to restating the language contained in Section 196(6), Section 60.16 requires that an arrest for domestic abuse be based on an investigation by the officer "of the circumstances surrounding the incident, past history of violence between the parties, statements of any children present in the residence, and any other relevant factors." 22 O.S.2011, § 60.16(B)(2). A rule that excluded the applicability of the collective knowledge doctrine would frustrate the stated unequivocal intent of the Legislature in this regard. With the possible exception of domestic abuse arising in a small community with an arresting officer who has a long history of service—one who might then have personal knowledge of the parties, their past history, and other relevant information—it would be exceedingly difficult, if not impossible, for one officer to possess personal knowledge of all of the information required by Section 60.16 prior to effectuating an arrest. With confidence we can say the Legislature did not intend such a result.

¶ 16 Having determined that the doctrine applies to a purely statutory challenge to the legality of an arrest, we now address the trial court's application of the rule in the present case. The State argues that the trial court's application of the collective knowl-

edge doctrine was incorrect. The State's arguments are well taken.

¶ 17 Over forty years ago in *Holt* we said: "It is well settled that an agent may rely upon his fellow officers to supply the information which forms the basis of the arresting officer's reasonable grounds for believing that the law is being violated." *Holt,* 1973 OK CR 38, ¶ 14, 506 P.2d at 566. Since that time, the Tenth Circuit in *Chavez* succinctly summarized the manner in which the collective knowledge doctrine can apply. Although not mutually exclusive, the court generally classified collective knowledge relationships as either "horizontal" or "vertical." *Chavez,* 534 F.3d at 1345.

¶ 18 Horizontal collective knowledge applies in situations where a number of individual law enforcement officers have pieces of information but no single officer possesses all of the information necessary to establish reasonable suspicion or probable cause to justify the action taken. *Id.* Because no one officer has the requisite level of knowledge, the horizontal collective knowledge doctrine requires a court to determine whether the individual officers communicated the information that they possessed individually in order to effectively pool their information and justify the action taken thereon. *Id.*

¶ 19 On the other hand, vertical collective knowledge applies where one officer has knowledge of facts rising to the level of reasonable suspicion or probable cause, as may be the case, and directs another officer to act without communicating the facts known by him to the second officer. *Chavez,* 534 F.3d at 1345. This rule allows the knowledge of the requesting officer to be imputed to the acting officer, *id.* at 1347, and derives from the Supreme Court decision in *U.S. v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). There the Court recognized that police officers are entitled to assume another officer or law enforcement agency requesting aid in performing a search or seizure has the information necessary to legally justify the action; however, the fact that one officer may follow a directive from others does not insulate the search or seizure if the directing officer or agency did not have

legally sufficient information. *Hensley,* 469 U.S. at 230–31, 105 S.Ct. at 681 (citing *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971)).

¶ 20 In situations involving vertical collective knowledge, the legality of a search or seizure stands or falls on the sufficiency of the information known to the officer directing that the challenged action be taken. *Chavez,* 534 F.3d at 1346; *see also Hensley,* 469 U.S. at 231, 105 S.Ct. at 681 (concluding that police officer may effectuate an arrest and conduct a search incident thereto on the basis of a flyer or bulletin issued by another agency, even though the bulletin did not set forth facts necessary to establish probable cause, but the legality of the arrest is determined by whether the agency issuing the bulletin had sufficient information to establish probable cause for the arrest). It is inconsequential whether the officer relying on the directive had knowledge of the specific facts which led to the request for assistance. *Hensley,* 469 U.S. at 231, 105 S.Ct. at 681. As explained by the Supreme Court: "In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction." *Id.*

¶ 21 The matter *sub judice* presents us with an application of the "vertical" collective knowledge doctrine and the principles announced in *Hensley.* Under these circumstances, it is irrelevant whether Deputy Smith actually conveyed his observations of the alleged victim's injuries to Deputy Spiva. Spiva was entitled to assume the request to arrest Iven was based on legally sufficient information known to a fellow officer directing the arrest be made. The relevant inquiry is whether Deputy Smith had the requisite information to support Iven's arrest at the time he made the request for action to be taken. On this point there is no dispute. Because Deputy Smith observed recent injury to the alleged victim, his knowledge is imputed to Deputy Spiva.

¶ 22 The trial court's determination that Iven's arrest was unlawful pursuant to Section 196(6) was based upon its finding that Deputy Spiva lacked personal knowledge of recent injury or physical impairment to the alleged victim and the court's disputed finding that Deputy Smith failed to communicate his personal knowledge when asking for assistance in arresting Iven for domestic abuse. This conclusion was an unreasonable action taken without proper consideration of the facts and law pertaining to the issue and, therefore, the trial court abused its discretion in granting Iven's motion to suppress.

### DECISION

¶ 23 The decision of the District Court of Blaine County granting Defendant's motion to suppress evidence is **REVERSED** and the case is **REMANDED** to the District Court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2014), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

¶ 24 LEWIS, P.J., C. JOHNSON, J., and A. JOHNSON, J., concur; LUMPKIN, J., concur in results.

LUMPKIN, Judge: concur in results.

¶ 1 I concur in the decision to reverse the District Court's order granting the motion to suppress and remand the case for further proceedings. However, I find that the defendant's claim, raised for the first time on appeal, that the collective knowledge doctrine cannot apply to the statutory challenge at issue, should be reviewed for plain error only.

¶ 2 To be entitled to relief under the plain error doctrine, Appellant must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *Hogan v. State,* 2006 OKCR 19, ¶ 38, 139 P.3d 907, 923; 20 O.S.2011, § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Hogan,* 2006 OK CR 19,

¶ 38, 139 P.3d at 923. Applying this analysis, I find no error and thus no plain error.