OSCN Found Document:MCKELVY v. STATE

 

 
 MCKELVY v. STATE2026 OK CR 14Case Number: F-2024-728Decided: 04/09/2026Mandate Issued: 04/09/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 14, __ P.3d __

 

 

BRITTANY DAWN MCKELVY, Appellant,

v.

THE STATE OF OKLAHOMA, Appellee.

SUMMARY OPINION

ROWLAND, JUDGE:

¶1 On September 6, 2023, Appellant McKelvy, represented by counsel, entered a guilty plea to Grand Larceny (21 O.S.Supp.2018, § 1705

¶2 The State filed an application to accelerate deferred judgment on August 12, 2024. The application alleged Appellant violated the terms and conditions of her probation by testing positive for methamphetamine and amphetamine on August 7, 2024. A hearing on the State's application was held on September 4, 2024. Judge Hall accelerated the deferred judgment and sentenced Appellant to a five year suspended sentence.

¶3 From this judgment and sentence, McKelvy appeals, raising a sole proposition of error:

Because a single failed drug test amounts only to a "technical violation" of the conditions of a deferred sentence, the trial court was without authority to enter judgment of guilt against McKelvy and proceed to sentencing.

¶4 Appellant argues that the trial court had no legal authority to enter a judgment of guilt against her, based on a technical violation of the rules and conditions of her deferment. In support of her argument, Appellant points to the language of 22 O.S.Supp.2021, § 991cId. 

¶5 A deferred sentence is given after a verdict or plea of guilty, and with the consent of the defendant. 22 O.S.Supp.2021, § 991cSee 22 O.S.Supp.2021, §§ 991c22 O.S.Supp.2021, § 991c

¶6 It is uncontested by the parties that an application to accelerate was filed by the State, Appellant did violate a condition of her probation, and that the violation was a "technical violation" as defined in 22 O.S.Supp.2021, § 991b

¶7 In 2018, the Legislature enacted Senate Bill 689, which was forty-five pages long and contained various criminal justice provisions. Before the 2018 amendments, 22 O.S.Supp.2015, 991c(F) stated:

F. The deferred judgment procedure described in this section shall apply only to defendants who have not been previously convicted of a felony offense and have not received a deferred judgment for a felony offense within the ten (10) years previous to the commission of the pending offense. Provided, the court may waive this prohibition upon written application of the district attorney. Both the application and the waiver shall be made a part of the record of this case.

After the 2018 amendments, 22 O.S.Supp.2018, § 991c

F. Whenever a judgment has been deferred by the court according to the provisions of this section, deferred judgment may not be accelerated for any technical violation unless a petition setting forth the grounds for such acceleration is filed by the district attorney with the clerk of the sentencing court and competent evidence justifying the acceleration of the judgment is presented to the court at a hearing to be held for that purpose. The hearing shall be held not more than twenty (20) days after the entry of the plea of not guilty to the petition, unless waived by both the state and the defendant. Any acceleration of a deferred sentence based on a technical violation shall not exceed ninety (90) days for a first acceleration or five (5) years for a second or subsequent acceleration. (emphasis added)

¶8 This legislation also amended 22 O.S.Supp.2015, § 991c

E. Upon violation of any condition of the deferred judgment, the court may enter a judgment of guilt and proceed as provided in Section 991a of this title or may modify any condition opposed. Provided, however, if the deferred judgment is for a felony offense, and the defendant commits another felony offense, the defendant shall not be allowed bail pending appeal.

Id. (emphasis added) After the 2018 amendments, the language contained in 22 O.S.Supp.2015, § 991c

Upon any violation of the deferred judgment, other than a technical violation, the court may enter a judgment of guilt and proceed as provided in Section 991a of this title or may modify any condition imposed. Provided, however, if the deferred judgment is for a felony offense, and the defendant commits another felony offense, the defendant shall not be allowed bail pending appeal.

22 O.S.Supp.2018, 991c(G) (emphasis added)

¶9 The language contained in 22 O.S.Supp.2015, 991c(F), is what has always given trial courts the authority, when there is any violation of probation, to accelerate one's deferred sentence and impose a sentence. The 2018 amendment removed that authority in the case of technical violations, and this authority was not replaced anywhere else in the statute. The result is that trial judges no longer have the authority to accelerate one's deferred sentence and impose a sentence pursuant to Section 991a, based only on a technical violation. 

¶10 If an application to accelerate a deferred sentence is based solely on technical violations, the trial court is authorized to sustain the State's application to accelerate the deferred sentence, not enter a judgment of guilt, and impose up to ninety days in jail for a first technical violation, and up to five years in prison for a second or subsequent violation. 22 O.S.Supp.2021, 991c(F)

¶11 Admittedly, this statute is no model of clarity, and the provision of up to five years without a conviction and judgment is, to say the least, curious. However, because this defendant has not yet been subjected to that portion of the statute, untying that knot must await another case and another day. We suggest, respectfully, that legislative attention to this statute would be most helpful before that next case comes before us.

¶12 At oral argument, the State made a compelling argument that the 2018 amendments to Section 991c apply only when the trial court accelerates a deferred sentence to incarceration, and thus only limit how much prison time one can get for first, second, or subsequent technical violations. The State supported this argument by claiming the Legislature intended to limit the amount of prison time given to probationers who commit only technical violations, not to completely remove the ability of a trial judge to impose judgment and sentence based only on technical violations. The problem with this argument is that ascertaining legislative intent is only applied by this Court to resolve ambiguity in statutory language, not when the text is clear. This Court has no authority to apply its own construction using such familiar canons as legislative intent. "[W]here the language of a statute is plain and unambiguous, and the meaning is clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning." Barnard v. State, 2005 OK CR 13119 P.3d 203McBrain v. State, 1988 OK CR 261764 P.2d 905Johnson v. State, 2013 OK CR 12308 P.3d 1053See also State v. Farthing, 2014 OK CR 4328 P.3d 1208Johnson, 2013 OK CR 12

¶13 When the Legislature took a statute which allowed acceleration for "any violation" and added the words "other than a technical violation," it unambiguously removed a category of cases from the trial judge's authority to impose sentence under Section 991a and replaced it with an entirely new procedure for dealing with these cases. The fact that this new procedure, specifically the time limits it purports to impose, may be ambiguous or less than clear does not allow us to ignore the plain text and meaning of this added language.

¶14 Appellant's sole proposition is GRANTED.

DECISION

¶15 The entry of judgment and five year suspended sentence in Kiowa County District Court Case No. CF-2023-46 is REVERSED and REMANDED to the District Court for further proceedings consistent with this ruling. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2026), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF KIOWA COUNTY,
THE HONORABLE RAFE HALL, DISTRICT JUDGE

 
 
 APPEARANCES AT TRIAL
 
 RONALD WILLIAMS
 ATTORNEY AT LAW
 OKLAHOMA INDIGENT DEFENSE
 SYSTEM
 123 WEST COMMERCE ST., #100
 ALTUS, OK 73521
 COUNSEL FOR DEFENDANT
 APPEARANCES ON APPEAL
 
 JAMES LOCKARD
 APPELLATE DEFENSE COUNSEL
 OKLAHOMA INDIGENT DEFENSE
 SYSTEM
 APPELLATE DIVISION WEST
 111 N. PETERS
 NORMAN, OK 73069
 COUNSEL FOR APPELLANT
 
 
 
 JORDAN CABELKA
 ASST. DISTRICT ATTORNEY
 KIOWA COUNTY COURTHOUSE
 MANGUM, OK 73651
 COUNSEL FOR STATE
 
 
  
 
 GENTNER F. DRUMMOND
 ATTY. GENERAL OF OKLAHOMA
 TESSA L. HENRY
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 

OPINION BY: ROWLAND, J.
LUMPKIN, P.J.: Dissent
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur
HUDSON, J.: Specially Concur

FOOTNOTES

Vanderpool v. State, 2018 OK CR 39434 P.3d 318Murphy v. State, 2012 OK CR 8281 P.3d 1283sua sponte and then rules in favor of its own argument. This is not a case in point, and we decline the dissent's invitation to do so.

HUDSON, JUDGE, SPECIALLY CONCURS:

¶1 I fully concur in today's decision reversing the district court's order of acceleration of McKelvy's deferred judgment to a five-year suspended sentence. The lead opinion correctly interprets and applies the amended provisions in 22 O.S.2021, § 991c

¶2 I write separately to address the dissent's incorrect claim that the restrictions contained within Section 991c(F),(G) violate the separation of powers clause. See Okla. Const. Art. 4, § 1. The Legislature with these amendments appropriately exercised its power to limit the extent to which a deferred judgment may be accelerated based on technical violations of the rules and conditions of probation. Probation and parole are matters of grace, and the Legislature exercised its power to prohibit acceleration of a deferred judgment based on a technical violation as part of its inherent power to prescribe punishment for criminal acts. E.g., Black v. State, 1973 OK CR 52509 P.2d 941Disheroon v. State, 1973 OK CR 405514 P.2d 685

¶3 This does not amount to an improper encroachment by the Legislature of the district court's exercise of discretion in the management of its judgments, or of its ability to conduct individualized sentencing of probationers. "The legislature does, or may, prescribe the rules under which the judicial power is exercised by the court[.]" Thomas Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 107 (1868). In the criminal law context, the Legislature has the authority to determine the appropriate range of punishment for a crime, "and the scope of judicial discretion with respect to a sentence is subject to [legislative] control." Mistretta v. United States, 488 U.S. 361, 364 (1989) (citing Ex parte United States, 242 U.S. 27 (1916)). Indeed, the Supreme Court has upheld mandatory sentencing schemes in noncapital cases in which the courts are given no discretion by statute. E.g., Chapman v. United States, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion. . . . A sentencing scheme providing for 'individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.'") (quoting Lockett v. Ohio, 438 U.S. 586, 604-05 (1978) (plurality opinion)). See also Mistretta, 488 U.S. at 363.

¶4 There is no credible argument that the amendments to 22 O.S.2021, § 991cState v. Ballard, 1994 OK CR 6868 P.2d 738Id. Such is not the case here. As Thomas Cooley stated in his well-known treatise on constitutional limitations:

It is the province of judges to determine what the law is upon existing cases. In fine, the law is applied by the [judiciary], and made by the [legislature]. To do the first . . . to compare the claims of parties with the law of the land before established . . . is in its nature a judicial act. But to do the last--to pass new rules for the regulation of new controversies--is in its nature a legislative act[.]

See Cooley, supra, at 92 (emphasis added).

¶5 The dissent's approach needlessly provokes a power imbalance in which legislative oversight of criminal sentencing laws would be sacrificed in the name of unrestricted judicial sentencing discretion. The various circumstances addressed in the dissent's writing are simply not present here. This is not for example a case where a statutory amendment has allowed judgments to be re-opened, thus nullifying judicial decisions that have already become conclusive. Nor do the statutory revisions at issue in this case unconstitutionally dilute the judiciary's authority to decide cases and impose sentence. The dissent overreacts to the legislature's exercise of its traditional authority in setting sentencing policy in passing the revisions to Section 991c(F),(G).

¶6 In the dissent's view, the legislature should have little say in sentencing policy. This would be an unprecedented assault on the checks and balances inherent in the concept of separation of powers. "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes[.]" Solem v. Helm, 463 U.S. 277, 290 (1983). While the dissent becries the potential abuses of legislative innovation in this area, the real danger, however, comes from the brand of unchecked judicial power championed by the dissent.

¶7 "When reviewing the constitutionality of a legislative act, we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but rather to see whether the act is prohibited." Romano v. State, 1993 OK CR 8847 P.2d 368Stitt v. Treat, 2024 OK 21546 P.3d 882

LUMPKIN, PRESIDING JUDGE: DISSENT

¶1 I cannot agree in the result reached in this case. I believe the Court goes too far in giving credence to the Legislature's ability to control the administration of a judgment rendered by a district court judge. The opinion correctly interprets the amended statute as if it is a proper statute to be passed by the Legislature. I question as to whether it is a proper exercise of the authority of the Legislature to control the discretion of a trial judge. Instead, I would find the amended statute violates Article IV, Section 1, of the Oklahoma Constitution and the doctrine of separation of powers. 

¶2 The concept of separation of powers is the central concept at the foundational root of our constitutional republic. Our Founders wanted to protect against the tyranny they had experienced from the King of England and knew that centralized power was the cause of that tyranny. As a protection against that concentration of power facilitating control over the rights of the individual citizen, the Founders established a constitutional separation of powers among the three branches of government. Stated simply, the legislative branch establishes and passes the laws that will be administered by the executive branch and the judicial branch interprets and sets forth the meaning of those laws. While the Legislature can and does enact laws creating some courts, its power is limited to enactment only. It cannot go further and tell either the executive or judicial branches how to administer those laws.

¶3 Although the phrase "separation of powers" does not explicitly appear in the United States Constitution, the principle is fundamentally embedded in its design and structure. Heavily influenced by the writings of the French philosopher, Charles Louis de Secondat, Baron de La Brede et de Montesquieu, the framers drew upon his ideas to construct a government resistant to tyranny. In The Spirit of Laws, Montesquieu expresses the important concept of separation of powers by stating, "[i]t is necessary from the very nature of things that power should be a check to power." Montesquieu, The Spirit of Laws 172 (1748). He further elaborates as follows:

Again, there is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator. Were it joined to the executive power, the judge might behave with violence and oppression."

Id. at 173.

¶4 Among the Framers of the Constitution, James Madison specifically articulated the importance of this doctrine in THE FEDERALIST No. 47, at 301 (James Madison) (Clinton Rossiter Edition, 1961), writing: "[t]he accumulation of all powers, legislative, executive and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." In response to several weaknesses of the Articles of Confederation, Madison was determined to create a new and improved framework, one in which three separate branches of government: executive, legislative, and judicial, would operate both independently and interdependently.

¶5 The work of the Framers was eventually put into play, and it was not long before the concept of judicial review was born from Marbury v. Madison, 5 U.S. 137 (1803). This new concept granted the judiciary the power to decide "cases and controversies" and placed the task of saying "what the law is" in the hands of the Supreme Court. Id. at 177. This holding highlighted the separation of powers doctrine. In United States v. Klein, 80 U.S. 128 (1871), the Supreme Court ruled that Congress cannot pass a law that dictates how courts should decide cases. In this case, by limiting appellate jurisdiction. The Court reasoned:

It is evident from this statement that the denial of jurisdiction to this court, as well as to the Court of Claims, is founded solely on the application of a rule of decision, in causes pending, prescribed by Congress. The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease, and it is required to dismiss the cause for want of jurisdiction.

It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.

Id. at 146.

¶6 Additionally, in Plaut v. Spendthrift Farm, 514 U.S. 211 (1995), the Court held that Section 27A(b) of the Securities Exchange Act of 1934 violated separation of powers because it allowed judgments to be re-opened, thus nullifying judicial decisions that had already become conclusive. Id. at 218-19. Citing THE FEDERALIST No. 78, at 523-525, the Court further expounded upon the notion that "the Legislature would be possessed of power to 'prescribe the rules by which the duties and rights of every citizen are to be regulated,' but the power of 'the interpretation of the laws' would be the proper and peculiar province of the courts." Id. at 222. The Court also relied on the following words of Thomas Cooley in his 1868 treatise:

if the legislature cannot thus indirectly control the action of the courts, by requiring of them a construction of the law according to its own views, it is very plain it cannot do so directly, by setting aside their judgments, compelling them to grant new trials, ordering the discharge of offenders, or directing what steps shall be taken in the progress of a judicial inquiry.

Id. at 225.

¶7 Finally, the Plaut Court put into its own words the importance of separation of powers and expressed as follows that legislative action attempting to re-open final judgments intrudes upon judiciary function:

To be sure, a general statute such as this one may reduce the perception that legislative interference with judicial judgments was prompted by individual favoritism; but it is legislative interference with judicial judgments, nonetheless. Not favoritism, nor even corruption, but power is the object of the separation-of-powers prohibition. The prohibition is violated when an individual final judgment is legislatively rescinded for even the very best of reasons, such as the legislature's genuine conviction (supported by all the law professors in the land) that the judgment was wrong; and it is violated 40 times over when 40 final judgments are legislatively dissolved.

Id. at 228 (italics in original).

¶8 The above analysis and application of the doctrine of separation of powers is well supported by our Founding Fathers in their expressions through the FEDERALIST PAPERS. They envisioned the new government would be based upon the constitution that was being presented to the people for adoption as our National Constitution. Their focus was to dilute the possibility of accumulation of power by any one branch of government.

¶9 In THE FEDERALIST, No. 48, at 309 (James Madison) (Clinton Rossiter, Edition 1961), Madison further shows concern regarding the power of the legislative branch when he says: "[t]he legislative department is everywhere extending the sphere of its activity and drawing all power into its impetuous vortex." Madison then quotes Thomas Jefferson's Notes on the State of Virginia, p.195, which states the following:

[i]f therefore the legislature assumes executive and judiciary powers, no opposition is likely to be made; nor if made can be effectual; because in that case, they may put their proceeding into the form of an act of assembly, which will render them obligatory on the other branches. They have accordingly in many instances decided the rights which should have been left to the judiciary controversy . . .

Thereafter, Madison asserts as follows:

A great number of laws had been passed violating without any apparent necessity, the rule requiring that all bills of a public nature shall be previously printed for the consideration of the people; although this is one of the precautions chiefly relied on by the Constitution, against improper acts of the legislature . . . cases belonging to the judiciary department frequently drawn within legislative cognizance and determination.

THE FEDERALIST, No. 48, at 312.

¶10 In THE FEDERALIST No. 78, at 465 (Alexander Hamilton) (Clinton Rossiter Edition, 1961), Hamilton, as part of his examination of the legislative and judicial branches of government made this comparison:

[T]he judiciary, from the nature of its functions will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them . . . The legislature not only commands the purse but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary on the contrary . . . may truly be said to have neither FORCE nor WILL, but merely judgment.

¶11 These two statements point out the differences between the two branches and the need to keep them separate. Hamilton further sets out the basic truth regarding separation of powers which I am seeking to point out in this case, when he states: "[T]here is no liberty, if the power of judging be not separated from legislative and executive powers." Id., at 466. Finally, he states: "[b]y a limited constitution, I understand one which contains certain specified exceptions to the legislative authority; such for instance as that it shall pass no bills of attainder, no ex post facto laws, and the like. . . [n]o legislative act, therefore, contrary to the Constitution, can be valid." Id. at 466-67. 

¶12 Referring again to the fear of all power being vested in a single branch of government, thus begetting the tyranny they had just escaped, in THE FEDERALIST No. 78, at 467 (Alexander Hamilton) (Clinton Rossiter Edition, 1961) Hamilton states:

If it be said that the legislative body are themselves the constitutional judges of their own powers and that the construction, they put upon them is conclusive upon the other departments it may be answered that this cannot be the natural presumption where it is not to be collected from any particular provision in the Constitution.

He notes the Founders' recognition of the need for separate, but equal, independent courts when he advises:

It is far more rational to suppose that the courts were designed to be an intermediate body between the people and their legislature in order, among other things, to keep the latter within the limits assigned to their authority. The interpretation of the laws is the proper and peculiar province of the courts.... [i]t therefore belongs to them to ascertain its meaning as well as the meaning of any particular act proceeding from the legislative body.

Id. Recognizing the imperfection of those who might be tempted to exceed the power granted to them by the Constitution, Hamilton pointed out "where the will of the legislature declared in its statutes, stands in opposition to that of the people declared in the constitution, the judges ought to be governed by the latter, rather than the former." Id. at 468.

¶13 All these comments from the Founders' perspective illustrate the need for each branch to stay within the constitutional limits set for its operation. As to the courts' power and responsibility, Hamilton continues in THE FEDERALIST No. 78, at 468 (Alexander Hamilton) (Clinton Rossiter Edition, 1961), to say: "whenever a particular statute contravenes the constitution; it will be the duty of the judicial tribunals to adhere to the latter and disregard the former." And further recognized that, "[t]he courts must declare the sense of the law." Id. at 469. Then Hamilton sums up the view of the judiciary by stating: "Here also the firmness of the judicial magistracy is of vast importance in mitigating the severity and confining the operation of such laws. It not only serves to moderate the immediate mischiefs of those which may have been passed but it operates as a check upon the legislative body in passing them." Id. at 470.

¶14 When the members of the Oklahoma Constitutional Convention met to fashion the constitution for the new State of Oklahoma, they had the perspective of both the founders and the over 120 years of experience with the Constitutional Republic form of government created by the Founders. And the constitution of Oklahoma adopted by the citizens of this state reflects that same constitutional republic form of government. As set forth in the Oklahoma Constitution, there are three separate but equal branches of the Oklahoma government, to wit:

The powers the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the other.

OKLA. CONST. Art. 4 § 1 (emphasis added).

¶15 As a result, the Founders' words still ring true, and the U.S. Supreme Court analysis of separation of powers is applicable as this issue is addressed.

¶16 With these historical underpinnings in mind, I now turn to the question at hand. That question is, has the Oklahoma Legislature overstepped its constitutional boundaries by seeking to tell judges of the District Court how they must exercise their discretion in the management of the judgments and decisions they render in criminal cases? Judges face the citizens they are sentencing and understand what is needed to manage the rules set out by their judgments while legislators do not.

¶17 Although the legislative branch is fully empowered to pass the laws of the state, it cannot invade the powers of the other branches. It cannot tell the executive branch how to administer the laws it passes or the judicial branch how to decide or enforce the judgments it renders pursuant to those laws. In this case we see the legislative branch seeking to tell the judicial branch how to administer the judgments courts have rendered. Thus, the legislature has exceeded its authority to merely set forth what the law is. It has sought to control the implementation and administration of the law it has established.

¶18 It is purely within the power and authority of courts to determine how to administer the judgments they have properly entered pursuant to the powers given to them by the Legislature. Once a citizen either is found guilty or enters a plea of guilty in a criminal case, any legislative control over that judgment ceases, except to the extent the courts must stay within their powers of sentencing established by the laws of the state.

¶19 However, once a valid judgment is rendered only the court has authority to determine how it will administer that judgment within the confines of the powers granted to it. Due to complexities of the issues involved and the difficulty in applying regular statutory construction rules to the amended statutes in question, this Court granted the parties' request for an oral argument to give the parties the opportunity to expand on their written briefs in this case. During the oral argument the Assistant Attorney General argued to the Court that the 2018 amendments were an effort of the Legislature to control prison population. While that is a noble goal for the Legislature to seek, it is not the judicial branch of government's purpose to carry out such a goal. The judges of the District Courts are required to adjudicate the issues in cases being tried before them based on the law and the facts.

¶20 In cases involving the application of criminal laws passed by the Legislature it is the judges' role to apply the law to the facts following constitutional principles to ensure fairness and consistency in the application of our laws. While it is a proper function of the legislative branch of government to pass the law to which all citizens must adhere and when violated for which a citizen can be prosecuted, it is a judge's role when that prosecution takes place to apply the law objectively and fairly.

¶21 If a citizen is found guilty of a criminal act either by trial or entry of a guilty plea, it is the judge's role to enter a proper sentence within his/her sentencing powers and the options provided by statute. If a judge deems it proper to enter an order to defer the actual sentencing for the crime, that is an act of grace. This allows the citizen to show their ability to adhere to conditions of the probation during their deferred sentence. Thereby, justifying the judge's exercising his/her discretion as to whether to dismiss the charges prior to sentencing, or enter a lesser sentence than otherwise would have been entered if the citizen had not qualified for a deferral of the sentencing date. It is the actions of the citizens that will determine the level of discretion the judge will exercise in that final decision. Therefore, once a judge enters the order deferring, the matter becomes solely an action to be taken within the judicial branch of our government and any interference by the legislative branch in that discretion and decision making is a violation of the doctrine of separation of powers.

¶22 Over the years, in an effort to shift the responsibility for the control of the prison population from the executive and legislative branches of government, the Oklahoma Legislature has sought to lay this responsibility at the feet of the judicial branch. That is an improper violation of the separation of powers doctrine and Article IV, Section 1 of the Oklahoma Constitution. Judges of the District Courts are adjudicators of cases in controversy before them and interpreters of the law. While these judges may determine guilt in a criminal prosecution and set sentences that may involve a discretionary decision to defer or suspend a sentence, they are not social workers that are to guide a person placed on probation through the rigors of complying with the rules and conditions of that probation. It is the judges' role to enforce the rules of the probation and determine at what point the probation is not working and an individual needs to be sentenced to incarceration. However, the Legislature over the years has sought to make this discretionary decision in advance via the very statute in question in this case, in addition to other statutes that fall into the same mold.

¶23 A history of 22 O.S. § 991a

¶24 As previously stated, it is commendable for the Legislature to seek to reduce the prison population. It is well within their duty and scope to create and implement policy. Through joint efforts with the executive branch, policies may be adopted to reduce possible sentences for certain crimes, provide the Department of Corrections with alternative treatment or work programs, or work with the district attorneys who have the day-to-day experience to suggest actions that could be taken to accomplish this goal. However, the Legislature may not manipulate the judiciary to achieve its policy objectives through amending and adding onto statutes that ultimately chip away at judicial discretion. In a constitutional republic form of government, as this state and our nation have adopted, the judicial branch is not the constitutional vehicle for reaching the policy goals of the Legislature.

¶25 The Legislature has properly granted the courts of this state the authority to either defer or suspend the execution of sentences given in criminal convictions, and that is where its authority stops. Seeking to go further and tell the courts how to administer those judgments violates separation of powers.

¶26 In this case statutory language seeks to limit judicial authority by restricting the courts in their ability to judge and administer their judgments without regard to the facts of each individual case. Originally, 22 O.S. § 991a

Upon violation of any condition of the deferred judgment, the court may enter a judgment of guilt and proceed as provided in Section 991a of this title or may modify any condition imposed. Provided, however, if the deferred judgment is for a felony offense, and the defendant commits another felony offense, the defendant shall not be allowed bail pending appeal.

However, during the 2018 legislative session, the statute was amended to:

Upon any violation of the deferred judgment, other than a technical violation, the court may enter a judgment of guilt and proceed as provided in Section 991a of this title or may modify any condition imposed. Provided, however, if the deferred judgment is for a felony offense, and the defendant commits another felony offense, the defendant shall not be allowed bail pending appeal.(emphasis added).

¶27 This amendment underscores the erosion of judicial discretion by giving the Legislature the authority to determine what constitutes sufficient grounds for action after a judge has issued a deferred judgment. While subsection 991b has existed since 1969, sections 991c-g were added through the years up until 1991. Over time, each of these sections has been amended and expanded, reflecting an ongoing legislative effort to encroach upon the discretionary authority of the judiciary.

¶28 In this case, the Court is presented with a request to apply a legislative intrusion into the area of judicial discretion in the application of 22 O.S.2021, § 991c22 O.S.2021, § 991b

¶29 The entry of a sentence in a particular case to give a qualifying defendant the opportunity to comply with rules of probation prior to being shackled with a criminal record is a discretionary act on the part of a judge. By seeking to create a "one size fits all" statutory mandate that disregards a judge's discretion and independent ability to administer the judgments rendered, the Legislature becomes an enabler of an individual's negative conduct rather than providing reformative procedures to be used via a judge's discretion in treating defendants as individuals rather than a number in a statute.

¶30 By limiting the discretion in the management of his/her rules of probation, the restriction enhances the belief of the offender that he or she is not accountable and can get away with violations the sentencing judge would not allow. This does not help correct the negative conduct that caused the conviction in the first place. That is the reason a sentencing judge has his/her discretion. It is to deal with individuals and the specific needs of each individual in order to gain compliance with the rules.

¶31 In the subsection being applied in this case the Legislature now seeks to tell a court HOW to manage its judgments. This violates the separation of powers doctrine by seeking to control the discretion of a court regarding the management of its judgments and whether a defendant who violates rules of probation needs further probation or should be incarcerated. Only the judge administering his or her case can determine that fact based on the individual involved and that individual's response to the rules set down.

¶32 As a result of the above historical analysis, I would find the statute as amended violates the provisions of Article IV, Section 1 of the Oklahoma Constitution which denies the ability of the Legislature to invade the discretion of judges of the District Court in the management and administration of their judgements and orders.

¶33 While the appellant raises the issue of the ability of the trial judge to accelerate and enter a judgment on the alleged "technical violation," the opinion points out it is specifically authorized. The entire statute as amended appears to be a legislative overreach into the discretionary authority of a trial judge to manage his/her cases and the judgments rendered as well as the conditions of probation ordered. This legislative act of invading the discretion of the judge in the management and enforcement of the rules of probation he or she has set forth to assist in the correction of a defendant's criminal conduct goes too far and violates the separation of powers doctrine as set forth above. The Court should either strike the offending language of the statute or declare the statute as amended, unconstitutional. For these reasons I must dissent. 

FOOTNOTES

See Davis v. State 1974 OK CR 78521 P.2d 422Doyle v. State, 1973 OK CR 282511 P.2d 1133Black v. State, 1973 OK CR 52509 P.2d 941