2012 OK CR 14

**STATE of Oklahoma, ex rel. Greg MASHBURN, District Attorney, Petitioner,**

v.

**Honorable Steve STICE, Special Judge, Respondent.**

**No. MA–2012–239.**

Court of Criminal Appeals of Oklahoma.

Oct. 24, 2012.

⌔223.1

---

### ORDER DENYING PETITION FOR
### WRIT OF MANDAMUS

¶ 1 On March 15, 2012, Petitioner, the State of Oklahoma ex rel. Greg Mashburn, District Attorney, Carl Buckholts, Assistant District Attorney, filed a Petition for Writ of Mandamus requesting this Court to direct Respondent, the Honorable Steve Stice, Special Judge, to order the Defendant in Cleveland County District Court Case No. CM–2011–3112, to pay the District Attorney a supervision fee of Forty Dollars ($40.00) per month, pursuant to 22 O.S.2011, § 991d(A)(2).

¶ 2 On November 21, 2011, the State of Oklahoma charged the Defendant with Aggravated Driving Under the Influence (47 O.S.2011, § 11–902(D)). On February 23, 2012, the State and the Defendant presented Respondent with a negotiated plea agreement wherein sentencing would be deferred for a period of one (1) year. As required by § 11–902(D), the plea agreement required

one year supervision, periodic testing, and installation of an ignition interlock device for a period of ninety (90) days. The agreement further reflected that the Defendant was to be supervised by the District Attorney's office.[1] Based upon this plea agreement, the Defendant entered his guilty plea to the offense.

¶ 3 Respondent held a hearing concerning the statutory requirements of supervision and periodic testing and determined the following: The District Attorney's office did not have the means to conduct the periodic testing required by statute but instead intended to direct the Defendant to a private supervision provider to complete those services. The District Attorney's office did not employ a probation officer but instead intended for the Defendant to be supervised by one of the administrative assistants in the District Attorney's office.

¶ 4 Based upon these findings, Respondent announced to the parties that the court would not accept the agreement. Respondent indicated that the court approved of all of the terms of the agreement with the exception of supervision by the District Attorney's Office. Respondent determined that the court believed additional resources were necessary to protect the public and facilitate the Defendant's success because of the aggravated use of alcohol involved in the offense. For those reasons, Respondent concluded that supervision by a private supervision provider was necessary.

¶ 5 Respondent provided the Defendant with an opportunity to withdraw his plea. The Defendant announced that he wanted to persist in his plea. Respondent deferred sentencing in the Defendant's case for a period of one (1) year under terms identical to those set forth in the plea agreement but directed supervision for a period of one year by the private supervision provider. Respondent refused to order the Defendant to pay a supervision fee to the District Attorney pursuant to 22 O.S.2011, § 991d(A)(2). The

State objected to these terms and announced on the record its intent to challenge the trial court's ruling.

¶ 6 The State raises a single proposition in its Petition:

I. The trial court failed to comply with a clear statutory provision requiring payment of supervision fees to the District Attorney's office.

■ ¶ 7 The requirements for the issuance of an extraordinary writ are set forth in Rule 10.1, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011). For a writ of mandamus, the petitioner has the burden of establishing (1) he or she has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. *State, ex rel. Lane v. Bass*, 2004 OK CR 14, ¶ 5, 87 P.3d 629, 631 (*overruled on other grounds by Blonner v. State*, 2006 OK CR 1, 127 P.3d 1135); *Bednar v. District Court of Kay County*, 2002 OK CR 41, ¶ 7, 60 P.3d 1, 3; *Woolen v. Coffman*, 1984 OK CR 53, ¶ 6, 676 P.2d 1375, 1377; Rule 10.6(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011).

¶ 8 Petitioner claims that Respondent had a legal duty to direct the Defendant to pay the District Attorney a supervision fee of Forty Dollars ($40.00) per month. Petitioner further claims that the trial court did not have any discretion in the matter as § 991d(A)(2) was the later enacted statute and thus modified the provisions of 22 O.S. 2011, § 991a(A)(1)(s).

¶ 9 On April 23, 2012, we directed Respondent to file a response to the Petition. That Response was filed on May 15, 2012, by and through Respondent's counsel, Stanley M. Ward and Scott F. Brockman. Respondent claims that § 991a(A)(1)(s) and § 991d(A)(2), are not irreconcilable and, when read in conjunction, the two statutes permit the trial court discretion to determine the issue of

---

1. The plea agreement further called for the Defendant to obtain an alcohol and drug substance abuse evaluation, attend DUI school, attend a Victim's Impact Panel, complete forty (40) hours of community service, and pay a $150.00 judicial assessment, a $100.00 victim's compensation assessment, a $100.00 Drug and Alcohol Education Treatment Revolving Fund assessment and court costs.

supervision and the correlating supervision fee.

¶ 10 Oral argument was heard in this matter May 24, 2012.[2]. . . . Whereupon we granted the request of the Oklahoma District Attorney's Association ("ODAA") to file an *amicus curiae* brief. The *amicus curiae* brief echoes the State's claim and relates the many benefits of the District Attorney's Offender Supervision Program. The ODAA asserts that § 991d(A)(2), does not require the District Attorney to provide any supervision services in exchange for the monthly supervision fee. However, the ODAA relates that on February 16, 2012, its council adopted "suggested minimum standards" for the District Attorney's Offender Supervision Program.

¶ 11 Regardless of the many benefits of the District Attorney's Offender Supervision Program and the financial impact on the 27 District Attorneys across the State, this Court must abide by the well settled rules of statutory interpretation.

Statutes are to be construed to determine the intent of the Legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. *Lozoya v. State*, 1996 OK CR 55, ¶ 17, 932 P.2d 22, 28; *State v. Ramsey*, 1993 OK CR 54, ¶ 7, 868 P.2d 709, 711. It is also well established that statutes are to be construed according to the plain and ordinary meaning of their language. *Wallace v. State*, 1997 OK CR 18, ¶ 4, 935 P.2d 366, 369–370; *Virgin v. State*, 1990 OK CR 27, ¶ 7, 792 P.2d 1186, 1188. We also recognize that the fundamental principle of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. *Wallace v. State*, 1996 OK CR 8, ¶ 4, 910 P.2d 1084, 1086; *Thomas v. State*, 1965 OK CR 70, ¶ 4, 404 P.2d 71, 73. However, it is not our place to interpret a statute to address a matter the Legislature chose not to address, even if we think that interpretation might produce a reasonable result.

*State v. Young*, 1999 OK CR 14, ¶ 27, 989 P.2d 949. 955. "[T]o ascertain the intention of the Legislature in the enactment of [a] statute, we may look to each part of the statute, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation." *Lozoya v. State*, 1996 OK CR 55, ¶ 20, 932 P.2d 22, 28 (quotations and citation omitted). Each part of the various statutes must be given intelligent effect.

This Court will not presume the Legislature to have done a vain thing. We are mindful that elementary rules of statutory interpretation require us to avoid any statutory construction which would render any part of a statute superfluous or useless. See, *Vilandre v. State*, 2005 OK CR 9, ¶ 5, 113 P.3d 893, 896; *Byrd v. Caswell*, 2001 OK CR 29, ¶ 6, 34 P.3d 647, 648–649.

*State v. Doak*, 2007 OK CR 3, ¶ 17, 154 P.3d 84, 87. Where possible the statutory amendments should be reconciled or construed together. *Id.*

¶ 12 However, where an irreconcilable conflict exists between two statutes, the latter statute controls.

Oklahoma law [ ] provides a remedy for interpreting conflicting statutes where the statutory language of the statutes cannot be reconciled. The latter statute controls. *See,* 75 O.S. § 22. The general rule of statutory construction is that the later-enacted legislation controls over the earlier-enacted provisions. We find that in the case of an irreconcilable conflict in statutory language, the later enacted statute modifies the earlier statute, even where both statutory amendments were enacted in the same Legislative session. See, *Taylor v. State*, 1982 OK CR 8, ¶ 5, 640 P.2d 554, 556; *City of Sand Springs v. Dep't of Pub. Welfare*, 1980 OK 36, ¶ 28, 608 P.2d 1139, 1151; *Pickett v. Okla. Dep't of Human Serv.*, 1996 OK CIV APP 142, ¶ 6, 932 P.2d 543, 545 (1996); 2006 OK AG 3. ¶¶ 6–8.

*Id.*, 2007 OK CR 3, ¶ 18, 154 P.3d at 87–88. Deference to our sister branch of the government requires that we apply a strong presumption against implied repeals of statutory

---

**2.** First Assistant District Attorney, Mark Gibson, appeared for Petitioner at oral argument. Respondent appeared through counsel Stanley M. Ward.

amendments. *Id.*, 2007 OK CR 3, ¶ 17, 154 P.3d at 87. When it is unfeasible to reconcile the language of the statutes, "application of the . . . rules of statutory construction becomes impossible." *Id.*

 ¶ 13 Reviewing the plain language of § 991a(A)(1)(s) and § 991d(A)(2), we find that the two statutes are not irreconcilably conflicting. Although the two statutes relate to the same subject it is possible to apply the rules of statutory construction. As such, we must reconcile the provisions of the statutes to give operative effect to each. Construing § 991a and § 991d together, we find that the Legislature intended for the court to have the authority and discretion to determine who will supervise a suspended or deferred sentence and direct payment of the supervision fee associated with that supervision.

¶ 14 Title 22 O.S.2011, § 991a(A)(1), permits the trial court following conviction of a crime to "[s]uspend the execution of sentence, in whole or in part, with or without probation" and order the defendant to comply with one or more of the conditions set forth within this subsection. The trial court is authorized to "[o]rder any conditions which can be imposed for a suspended sentence pursuant to paragraph 1 of subsection A of Section 991 a of this title" as a condition of a deferred sentence. 22 O.S.2011, § 991c(A)(10). Pursuant to 22 O.S.2011, § 991a(A)(1)(s), the trial court may order the offender "to be supervised by a Department of Corrections employee, a private supervision provider, or other person designated by the court." (emphasis added).[3] Section 991a(A)(1), does not specifically provide for supervision by the District Attorney. Although § 991d(A)(2), explicitly provides for the payment of a "supervision fee" to the District Attorney, there is no statutory provision that explicitly authorizes the District Attorney to supervise a deferred or suspended sentence. As such, supervision by the District Attorney's office falls under the pro-

visions of "other person designated by the court" within § 991a(A)(1)(s).

¶ 15 We note that the plain language of § 991a(A)(1)(s), permits supervision by only one entity at a particular time. This distinction is important as we move forward to the analysis of supervision fees.

¶ 16 The trial court is further authorized under § 991a(A)(1), to require a defendant to pay a supervision fee. Section 991a(A)(1)(r), provides:

> to pay a fee, costs for treatment, education, supervision, participation in a program, or any combination thereof as determined by the court, based upon the defendant's ability to pay the fees or costs,

*Id.* Under § 991a(A)(1)(r), the trial court determines the amount of the fee for supervision by a private supervision provider or other person designated by the court.

¶ 17 In contrast, § 991d, titled "Supervision Fees," sets the amount of the supervision fee paid to the Department of Corrections. "When the court orders supervision by the Department of Corrections, or the district attorney requires the Department to supervise any person pursuant to a deferred prosecution agreement," 22 O.S.2011, § 991d(A)(1), requires the offender "to pay a supervision fee of Forty Dollars ($40.00) per month during the supervision period, unless the fee would impose an unnecessary hardship on the person." *Id.*

¶ 18 In 2003, the Legislature amended § 991d, to provide for payment of a "supervision fee of Twenty Dollars ($20.00) per month" to the District Attorney. 22 O.S.Supp.2003. § 991d(A)(2). In 2008, the fee was raised to "Forty Dollars ($40.00) per month." 22 O.S.Supp.2008, § 991d(A)(2)(b). The current version of the statute provides, in relevant part:

**Supervision Fee**

A. 1. When the court orders supervision by the Department of Corrections, or

---

**3.** Title 22 O.S.2011, § 991c(A)(7). also authorizes supervision in the community for a period not to exceed two years and requires payment of a "supervision fee of Forty Dollars ($40.00) per month" to the "supervisory agency." Section 991a(A)(1)(s), is more expansive as it is not limited to an "agency" but also permits supervision by private supervision providers or a person designated by the court. The fee set forth in § 991c(A)(7), is the identical fee set forth in § 991d(A)(1).

the district attorney requires the Department to supervise any person pursuant to a deferred prosecution agreement, the person shall be required to pay a supervision fee of Forty Dollars ($40.00) per month during the supervision period, unless the fee would impose an unnecessary hardship on the person. In hardship cases, the Department shall expressly waive all or part of the fee. The court shall make payment of the fee a condition of the sentence which shall be imposed whether the supervision is incident to the suspending of execution of a sentence, incident to the suspending of imposition of a sentence, or incident to the deferral of proceedings after a verdict or plea of guilty. The Department shall determine methods for payment of supervision fee, and may charge a reasonable user fee for collection of supervision fees electronically. The Department is required to report to the sentencing court any failure of the person to pay supervision fees and to report immediately if the person violates any condition of the sentence.

2. When the court imposes a suspended or deferred sentence for any offense and does not order supervision by the Department of Corrections, the offender shall be required to pay to the district attorney a supervision fee of Forty Dollars ($40.00) per month. In hardship cases, the district attorney shall expressly waive all or part of the fee.

22 O.S.2011. § 991d(A).

¶ 19 Petitioner contends that pursuant to this statute the trial court has a duty to direct payment of the Forty Dollar ($40.00) per month fee to the District Attorney in every instance in which the court does not order supervision by the Department of Corrections. We disagree. Applying the rules of statutory interpretation we find that the Legislature intended for the fee set forth in § 991d(A)(2) to be paid to the District Attorney when the District Attorney actually supervises the offender during the supervised portion of a suspended or deferred sentence.

¶ 20 First, the Legislature's placement of the fee within § 991d provides insight into its intent. This statute is titled "Supervision Fee." *Id.*[4] The plain and ordinary language of § 991d(A)(2) reveals the nature of the fee paid to the District Attorney. The fee is labeled "a supervision fee" within the body of the subsection. *Id.* Supervision is: "The act of managing, directing, or overseeing persons or projects." Black's Law Dictionary 1479 (Eighth Edition 2004). The "supervision fee" that the Department of Corrections receives pursuant to § 991d(A)(1) is for the actual supervision of the offender. The juxtaposition of the "supervision fee" paid to the Department of Corrections with the "supervision fee" paid to the District Attorney within § 991d(A)(2) further demonstrates the Legislature's intent that the fee paid to the District Attorney is for the actual supervision of the offender. The "supervision fee" is only paid to the District Attorney in the circumstances that the Department of Corrections could not earn such a fee. Therefore, we find that the fee within § 991d(A)(2) is to be paid to the District Attorney as a fee to compensate the District Attorney for the actual act of supervising the offender during the applicable period of supervision.

¶ 21 Second, we must construe the language within § 991d(A)(2), to give intelligent effect to § 991a(A)(1)(s). Standing alone, the language "when the court ... does not order supervision by the Department of Corrections" within § 991d(A)(2), appears to require payment of a supervision fee to the District Attorney even if the court orders supervision by a private supervision provider or other designated person. However, we must reconcile this language with the language within § 991a(A)(1)(s), limiting the court to imposing supervision by a "Department of Corrections employee, a private supervision provider, or other person designated by the court." (emphasis added). Because the plain language of § 991a(A)(1)(s), permits supervision by only one entity at a particular time, the District Attorney cannot supervise an offender when the court has ordered su-

---

4. The Legislature has labeled § 991d as both "which relates to supervision fees," and "which relates to supervision fee." 2009 OKLA. SESS. LAWS, CH. 138; 2008 OKLA. SESS. LAWS, CH. 345. 474.

pervision by a private supervision provider or designates a person other than the District Attorney. We further note that § 991d only makes provision for the payment of a single "supervision fee." As the Legislature's intent was for the fee set forth in § 991d(A)(2), to compensate for actual supervision of the offender, the District Attorney does not get this "supervision fee" when the court has ordered supervision by a private supervision provider or designates a person other than the District Attorney.

¶ 22 Third, Petitioner's interpretation of § 991d(A)(2), would lead to the absurd consequence of eliminating all terms of unsupervised probation within the State. This result is inconsistent with numerous provisions within the various statutes. See 22 O.S.2011, §§ 991a, 991c. Supervision in the community as a condition of a deferred or suspended sentence is not mandatory but is discretionary pursuant to both § 991a(A)(1)(s) and § 991c(A)(7). Section 991c(A)(8), explicitly provides for the payment of a monthly assessment to the court fund during any period during which the proceedings are deferred and the offender is not supervised in the community. As the Legislature left these provisions in place, we find that the Legislature did not intend to eliminate unsupervised terms of probation within the State.

■■■ ¶ 23 We do not begin to determine what the District Attorneys must include within their District Attorney's Offender Supervision Program. Generally, it is the authority of the executive branch to administer sentences. *See Fields v. Driesel,* 1997 OK CR 33, ¶¶ 20–21, 941 P.2d 1000. 1005. However, we must distinguish between the circumstance where the trial court orders an offender to be supervised during a suspended or deferred sentence and the District Attorney's customary duties. We recognize that the District Attorney has additional duties associated with a suspended or deferred sentence as opposed to a term of incarceration. When an offender remains in the community and is not supervised, the District Attorney is often tasked with verifying that the offend-

er is abiding by the rules and conditions imposed by the trial court.[5] Clearly, the Legislature is free to enact legislation requiring an offender to compensate the District Attorney for the additional work of verifying the offender's compliance with the rules and conditions during an unsupervised probationary term in the community. *Warnick v. Booher,* 2006 OK CR 41, ¶ 10, 144 P.3d 897, 900 ("In the State of Oklahoma, the legislative branch of government is vested with the power of enacting all laws."). However, it is apparent from the plain language of the statutes that the Legislature intended the fee within § 991d(A)(2) to be a "supervision fee" that is paid during the time period in which the trial court has ordered the offender to be supervised. As § 991a(A)(1)(s), only permits supervision by one entity at a particular time, the District Attorney only receives this "supervision fee" when no other entity or person has been designated to supervise the offender.

¶ 24 We determine that when the court imposes a suspended or deferred sentence and orders supervision but does not order supervision by the Department of Corrections, a private supervision provider or a person other than the District Attorney, then the supervision defaults to the District Attorney and the trial court must require the offender to pay the "supervision fee" set forth in § 991d(A)(2) to the District Attorney. However, in the instance that the trial court orders supervision by the Department of Corrections, a private supervision provider or a person other than the District Attorney then the trial court cannot require the offender to pay a supervision fee to both the District Attorney and the supervision provider.

¶ 25 Turning to the present case, we find that Petitioner has not shown Respondent's refusal to perform a plain legal duty not involving the exercise of discretion. When the trial court rejected the negotiated plea agreement and the Defendant did not exercise his right to seek to withdraw his plea, then the plea became a blind guilty plea.

---

**5.** In the present case, the record reflects that the District Attorney's office verified an offender's compliance with the rules and conditions of pro-

bation by checking the file in the court clerk's office for attendance receipts and certificates of program completion.

The issue of punishment was left to Respondent's discretion. *Medlock v. State*, 1994 OK CR 65, ¶ 2 n. 2, 887 P.2d 1333, 1337 n. 2 ("A 'blind' plea of guilty is a plea in which there is no binding agreement on sentencing, and punishment is left to the judge's discretion."). Petitioner was free to make a recommendation as to the lawful punishment for the Defendant's act. However, Respondent's determination that supervision by a private supervision provider was the better means to ensure public safety and facilitate the Defendant's success involved the exercise of discretion. This determination ultimately settled who received the supervision fee. Petitioner has not shown that he has a clear legal right to the relief sought. As such, he has not met the burden for extraordinary relief.

¶ 26 Accordingly, the Petition for Writ of Mandamus is **DENIED.**

¶ 27 **IT IS SO ORDERED.**

/s/ Arlene Johnson
ARLENE JOHNSON, Presiding Judge

/s/ David B. Lewis
DAVID B. LEWIS, Vice Presiding Judge, concurs in result only.

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Clancy C. Smith
CLANCY C. SMITH, Judge, concur in result

SMITH, J., concurring in results.

¶ 1 I do not agree with the majority that this is a blind plea. By failing to object the State of Oklahoma tacitly agreed to a renegotiated plea agreement.