OSCN Found Document:GERHART v. STATE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 GERHART v. STATE
2015 OK CR 12
Case Number: F-2014-726
Decided: 10/07/2015
ALBERT GUSTAVA GERHART, Appellant, v. STATE OF OKLAHOMA, Appellee.
Cite as: 2015 OK CR 12, __ __

 

 



O P I N I O N 




LUMPKIN, VICE PRESIDING JUDGE:


¶1 Appellant Albert Gustava Gerhart was tried by jury and convicted of Blackmail (Count I) (21 O.S.2011, § 1488), and Violation of the Computer Crimes Act (Count II) (21 O.S. 2011, § 1958), in Case No. CF-2013-2179, in the District Court of Oklahoma County. The jury recommended as punishment a fine of $1,000.00 in Count I and the trial court sentenced accordingly. No fine was recommended in Count II. It is from this judgment and sentence that Appellant appeals.

¶2 On March 26, 2013, Appellant sent the following email to the office of State Senator Cliff Branan:



Branan,

Get that bill heard or I will make sure you regret not doing it. I will make you the laughing stock of the Senate if I don't hear that this bill will be heard and passed. We will dig into your past, yoru [sic] family, your associates and once we start on you there will be no end to it.

This is a promise.

Al Gerhart
Sooner Tea Party.



¶3 The Senator's executive assistant discovered the email the next day when checking the morning correspondence and promptly showed it to the Senator. He put a copy of the email in his pocket and over the next few days contacted law enforcement. On April 9, 2013, the State filed charges of Blackmail and Violation of the Computer Crimes Act against Appellant.

¶4 In his sole proposition of error on appeal, Appellant asserts that the email sent to the Senator is constitutionally protected speech and therefore cannot serve as a basis for the criminal convictions. Appellant is not asking this Court to find the blackmail statute, 21 O.S.2011, § 1488, unconstitutional; rather he argues the statute cannot be applied to him as the email is constitutionally protected speech. The State responds that the email met the elements of blackmail, which is not constitutionally protected speech, and may serve as the basis of a criminal conviction.

¶5 This Court has not previously had the opportunity to construe § 1488. However, for the purposes of this opinion, we presume it is constitutional. See Board of Trustees of State University of N.Y. v. Fox, 492 U.S. 469, 484-485, 109 S.Ct. 3028, 3037, 106 L.Ed.2d 388 (1989)("[i]t is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily-that is, before it is determined that the statute would be valid as applied"); Murphy v. State, 2012 OK CR 8, ¶ 32, 281 P.3d 1283, 1292 (we presume state statues are constitutional). See also United States v. Grace, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (both cases address constitutionality of a federal statute as applied to the defendant). As Justice Opala explained in his dissenting opinion in Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co., 2000 OK 2, 995 P.2d 1124:



An "as applied" challenge seeks relief from a specific application of a facially valid statute to an individual (or class of individuals) who is under an allegedly impermissible legal restraint or disability as a result of the manner (or circumstances) in which the statute has been employed. The attack launched under this rubric contemplates a factual analysis of the case to determine the circumstances in which the enactment has been utilized and to consider whether in those particular circumstances the employment deprives anyone to whom it was applied of a protected right. While a law found deficient in its application to one plaintiff cannot be enforced against that person, it would escape the judiciary's general condemnation of invalidity.



2000 OK 2, ¶ 10, 995 P.2d at 1136 (Opala, J., dissenting) (footnotes omitted) (emphasis in original).

¶6 A statute which criminalizes speech must be interpreted within the parameters of the First Amendment. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. 1. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." United States v. Alvarez, 567 U.S. ___, 132 S.Ct. 2537, 2543, 183 L.Ed.2d 574 (2012) (quoting Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002)). See also United States v. Stevens, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584, 176 L.Ed.2d 435 (2010). The Oklahoma Constitution also provides protection for speech. "Every person may freely speak, write, or publish sentiments on all subjects; being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech of the press." Okla. Const. art. II, § 22.

¶7 The United States Supreme Court has held that certain categories of speech do not receive constitutional protection. Alvarez, 132 S.Ct. at 2544. "[C]ontent-based restrictions on speech have been permitted, as a general matter, only when confined to the few 'historic and traditional categories [of expression] long familiar to the bar'". Id. Restrictions on the content of speech have been upheld in the few limited areas which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 383, 112 S.Ct. 2538, 2543, 120 L.Ed.2d 305 (1992). These traditional limitations include advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; "so-called 'fighting words'"; child pornography; true threats; and speech presenting some grave and imminent threat the government has the power to prevent. Alvarez, 132 S.Ct. at 2544.

¶8 The State asserts the email is "speech integral to criminal conduct" and thus not constitutionally protected. In Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed.2d 834 (1949) relied upon by the State, members and officers of the Ice and Coal Drivers and Handlers Local Union No. 953, affiliated with the American Federation of Labor engaged in efforts to force Empire Storage and Ice Co., (hereafter Empire) and other nonunion retail ice peddlers to sell ice only to union peddlers. Empire refused to cooperate. Its place of business was then picketed by union members. Compelling Empire to sell only to union peddlers was a violation of a Missouri state statute. A subsequent lawsuit resulted in the issuance of an injunction against the Union's picketing in and around Empire's place of business. On appeal, the Supreme Court found the picketing and other activities by the Union, "constituted a single and integrated course of conduct, which was in violation of Missouri's valid law." Id. at 498, 69 S.Ct. at 688. The Supreme Court stated: "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now." Id. at 498, 69 S.Ct. at 688-689. The Court explained, "[w]e think the circumstances here and the reasons advanced by the Missouri courts justify restraint of the picketing which was done in violation of Missouri's valid law for the sole immediate purpose of continuing a violation of law." Id. at 501, 69 S.Ct. at 690.

¶9 The facts of the present case are distinguishable. Appellant's email did not urge or compel the Senator to violate the law or commit an unlawful act, nor was it sent with the intent to compel the Senator to violate the law. The email was sent with the intent to convince the Senator to change his mind on a political issue.

¶10 The State further relies on cases from several federal circuits stating that blackmail is not a constitutionally protected form of speech. These cases, Planned Parenthood of Columbia/Williamette, Inc. v. American Coalition of Life Activists, 244 F.3d 1007, 1015 (9th Cir. 2001) and Smithfield Foods, Inc. v. United Food & Commercial Workers International Union, 585 F.Supp.2d 789, 804 (E.D. Va. 2008) involve violations of federal statutes much different from our state blackmail statute. Further, these cases and others cited by the State address whether a particular communication constitutes a "true threat." To fall outside the protections of the First Amendment, a "true threat" must be a threat of violence. Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 1548, 155 L.Ed.2d 535 (2003). The case before us does not involve threats of violence.

¶11 The communication in this case falls short of the types of speech, i.e., true threats, speech integral to criminal conduct, etc., which subject the speaker to criminal liability.

¶12 While the authorities cited by both Appellant and the State offer helpful insights, the issue before us is resolved by looking to the words of the state statute and their application to the facts of this case.

¶13 Title 21 O.S.2011, § 1488 provides:



Blackmail is verbally or by written or printed communication and with intent to extort or gain anything of value from another or to compel another to do an act against his or her will:

1. Accusing or threatening to accuse any person of a crime or conduct which would tend to degrade and disgrace the person accused;

2. Exposing or threatening to expose any fact, report or information concerning any person which would in any way subject such person to the ridicule or contempt of society; or

3. Threatening to report a person as being illegally present in the United States, and is coupled with the threat that such accusation or exposure will be communicated to a third person or persons unless the person threatened or some other person pays or delivers to the accuser or some other person something of value or does some act against his or her will. Blackmail is a felony punishable by imprisonment in the State Penitentiary for not to exceed five (5) years or fine not to exceed Ten Thousand Dollars ($10,000.00) or by both such imprisonment and fine.



¶14 In determining the applicability of this statute to Appellant, we are guided by certain rules of statutory construction. These include construing the statute according to the plain and ordinary meaning of its language with the fundamental principle being to ascertain and give effect to the intention of the Legislature as expressed in the statute. State ex rel. Mashburn, 2012 OK CR 14, ¶ 11, 288 P.3d 247, 250. "When our law punishes words, we must examine the surrounding circumstances to discern the significance of those words' utterance, but must not distort or embellish their plain meaning so that the law may reach them." United States v. Bagdasarian, 652 F.3d 1113, 1120 (9th Cir. 2011).

¶15 In the present case, the communication was an electronic message sent to the Senator telling him to have the bill heard in the legislative committee and ensure the bill was passed out of committee. Senator Branan testified that as Chairman of the Senate Energy Committee it was his responsibility to determine which assigned bills would get a hearing before the committee. The Senator said he "wasn't inclined to hear the subject matter" but he had no control over whether a bill was passed out of committee.

¶16 The State argues the Senator was being forced to do something against his will, i.e., grant the bill a hearing in the committee and get it passed out of committee. A claim of coercion does not remove the email from the reach of the First Amendment. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91S.Ct.1575, 1577-78, 29 L.Ed.2d 1 (1971) (civil rights organization's distribution of leaflets and pamphlets regarding realtor's practices which threatened more leaflets and pamphleteering if realtor did not change his practices held to be a form of communication protected by the First Amendment). "Speech does not lose its protected character ... simply because it may embarrass others or coerce them into action." NAACP v. Claiborne Hardware Co., 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982) (nonviolent elements of boycott of area merchants, including attempts to persuade others to join boycott through social pressure and the threat of social ostracism, held to be entitled to the protections of the First Amendment).

¶17 Viewing Appellant's communication in the context in which it was sent, the political arena, we find any claim of coercion fails. The record does not support a finding that the Senator was being compelled to do anything against his will. The Senator testified he had no control over whether the bill passed out of committee, although he admitted it was his decision regarding whether the bill would get a hearing in the committee. However, the Senator explained that the Legislature was in the second week of three weeks of committee hearings and while he was inclined not to give the bill a hearing because it contained language similar to other bills he had previously elected not to grant hearings, he had not made a "final, final decision on that particular piece of legislation."

¶18 Further, the circumstances surrounding the communication indicate the email was sent with the intent to persuade the Senator to change his mind about a proposed piece of legislation for which he had not previously voiced support. This is pure political advocacy available to every citizen. "The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Meyer v. Grant, 486 U.S. 414, 421, 108 S.Ct. 1886, 1891, 100 L. Ed.2d 425 (1988)( quoting Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)).

¶19 The record indicates that Appellant was somewhat of an irritant to Oklahoma lawmakers. However, the Constitution protects the right of the political irritant to contact his elected representative and voice his concerns as much as it protects any citizen's right to do so. See E. R. R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 137, 81 S. Ct. 523, 529, 5 L.Ed.2d 464 (1961) ("[i]n a representative democracy . . . [the] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives").

¶20 The next three paragraphs of the statute set out three ways in which blackmail can be committed. We are concerned with only the first two alternatives: 1) by accusing or threatening to accuse any person of a crime or conduct which would tend to degrade and disgrace the person accused; and 2) by exposing or threatening to expose any fact, report or information concerning any person which would in any way subject such person to the ridicule or contempt of society.

¶21 Appellant's threat to "dig into" the past of the Senator and his family and associates did not accuse or threaten to accuse the Senator or anyone of a crime. The email did not state that Appellant would expose any specific information which would tend to degrade and disgrace any of the persons listed in the email. The email did not expose or threaten to expose any fact, report or information concerning any of those mentioned in the email which would in any way subject such person to the ridicule or contempt of society. The email simply said the Senator's failure to get the bill a hearing and pass it out of committee would be answered with investigation in the future.

¶22 The alternative ways of committing blackmail listed in the statute do not extend to Appellant's conduct in this case. A communication is felonious under the blackmail statute based on what the speaker threatens to do. Here, Appellant did not threaten to do any act prohibited by the statute. The blackmail charge in this case was premature.

¶23 If Appellant had accused or threatened to accuse any of those persons mentioned in the email of a crime, for the purpose of getting a hearing on the bill and its passage out of the committee, then Appellant would be guilty of blackmail. If Appellant had accused or threatened to accuse any person mentioned in the email of specific and particular conduct which would tend to degrade and disgrace the person accused, for the purpose of getting a hearing and passage of the bill out of committee, then Appellant would be guilty of blackmail. If Appellant had exposed or threatened to expose any fact, report or information concerning any person mentioned in the email which would in any way subject such person to the ridicule or contempt of society, for the purpose of getting a hearing and passage of the bill out of committee, then Appellant would be guilty of blackmail. Here, the email did not state that Appellant had any such information. Further, depending on the form any possible future investigation took, Appellant could be subject to criminal charges for harassment, stalking, etc.

¶24 We recognize that communications sent privately to a specific individual could be seen by the recipient as more threatening than statements made at a public gathering. See United States v. Syring, 522 F.Supp.2d 125, 134 (D.D.C.2007) (emails and voice mails sent to employees of Arab American Institute were "true threats" of violence). However, the communication in the present case was sent to a popularly elected state senator at his legislative office. Evidence presented at trial showed similar types of emails were received by the Senator in the normal course of considering the issues before the Legislature. Appellant's email does not communicate a serious threat to commit an act prohibited by the state blackmail statute.

¶25 In Watts, the defendant was convicted of the violation of a federal statute making it illegal to threaten the life of the President of the United States for telling a small group at a political rally "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706, 89 S.Ct. at 1401. In reversing the conviction, the Supreme Court stated in part:



We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term. For we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' The language of the political arena, like the language used in labor disputes, is often vituperative, abusive, and inexact. We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.' Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.



Id. at 708, 89 S.Ct. at 1401-1402 (internal citations omitted).

¶26 We find Appellant's email threatening to investigate the past of the Senator and his family and associates if the Senator did not get the bill a hearing and pass it out of committee as Appellant wished is the kind of vehement, caustic and unpleasantly sharp political speech protected by the First Amendment. Appellant sought to bring about political change. While his method of doing so may be seen as bombastic and extreme with unfortunate and unnecessary references to the Senator's family and associates, this type of political hyperbole does not take the communication out of the protections of the First Amendment. As the Supreme Court said in Alvarez, "[o]ne of the costs of the First Amendment is that it protects the speech we detest as well as the speech we embrace. Though few might find respondent's statements anything but contemptible, his right to make those statements is protected by the Constitution's guarantee of freedom of speech and expression." 132 S.Ct. at 2551.

¶27 This case presents an issue that goes to the foundation of our Republic, i.e., individual freedom and the protection of the individual's freedom of expression under the First Amendment of the U.S. Constitution. The political process places those who seek to serve as legislators in the crosshairs of the divergent views of the public they seek to serve. To preserve the Republic we must continually preserve the right of the citizen to dissent and express their desires. While some in the body politic may use crude and offensive methods of stating their political opposition, the crudeness is protected by the U.S. Constitution. While we might find the words and manner offensive, we must recognize it is part of the friction and grist intended by our Founders in forming this nation as expressed in the Preamble to our Constitution. If we are to continue to be a nation of the people, by the people and for the people, we must recognize that freedom of expression set out in the First Amendment has very limited restrictions upon its application. Our Legislators, by the very nature of their position, are required to endure the passions and pleas of the public as they do the people's work. While some petitioners are uncivil and do little to advance their cause, they are still part of the citizen involvement in our political process. The petition in the form of an email fits this class of petitioner. In reality, it is not much different from the corporate lobbyist who subtly infers the loss of campaign contributions and support if a bill is not heard or passed. While the finesse is greater, the political pressure is the same. In fact, it brings home the often used comparison of the legislative process to the making of sausage.

¶28 Our Founders knowingly created what observers have noted is a very messy process to ensure we never lose sight that "we the people" are the Union and that the peoples' chosen representatives in Congress and the legislature reflect their desires. The Founders meant it to be that way on purpose. This is illustrated by James Madison's writing in Federalist No. 10 on "factions" in our political process:



It could never be more truly said than of the first remedy, that it is worse than the disease. Liberty is to faction, what air is to fire, an ailment without which it instantly expires. But it could not be a less folly to abolish liberty, which is essential to political life, because it nourishes faction, than it would be to wish the annihilation of air, which is essential to animal life, because it imparts to fire its destructive agency.



THE FEDERALIST No. 10 (James Madison).

¶29 In the present case, Appellant's crude and uncivil method was not one which would engender support for his cause but the First Amendment protects his right to be crude. While Madison's analogy focuses on the need for the divergent views exhibited by "factions" within our Republic, the analogy also reveals the need to preserve our freedom of expression and speech under the First Amendment.

¶30 Having thoroughly reviewed the language of 21 O.S.2011, § 1488 and Appellant's conduct, we find the statute has been unconstitutionally applied to Appellant as his email to the Senator falls within the protections of the First Amendment. Therefore his conviction for blackmail is reversed with instructions to dismiss. Further, as the conviction under the Computer Crimes Act, 21 O.S.2011, § 1958, is dependent upon the use of a computer to violate the provisions of the Oklahoma Statutes, that conviction is also reversed with instructions to dismiss.

DECISION

¶31 The Judgment and Sentence is REVERSED with instructions to the District Court to DISMISS the charges. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE RAY C. ELLIOTT, DISTRICT JUDGE


 


 
 
 
 APPEARANCES AT TRIAL

 KEVIN D. ADAMS
 STEPHEN LEE
 210 WEST 12TH
 TULSA, OK 74119
 COUNSEL FOR DEFENDANT

 
 
 DAVID PRATER
 DISTRICT ATTORNEY
 SCOTT ROWLAND
 ROBERT MCCLATCHIE
 ASSISTANT DISTRICT ATTORNEYS
 320 ROBERT S. KERR
 OKLAHOMA CITY, OK
 COUNSEL FOR THE STATE

  

 OPINION BY: LUMPKIN, V.P.J.
 SMITH, P.J.: Dissents
 JOHNSON, J.: Dissents
 LEWIS, J.: Concurs
 HUDSON, J.: Specially Concurs
 
 
 APPEARANCES ON APPEAL

 KEVIN D. ADAMS
 210 WEST 12TH ST.
 TULSA, OK 74119
 COUNSEL FOR APPELLANT

 
 
 
 E. SCOTT PRUITT
 ATTORNEY GENERAL OF OKLAHOMA
 THEODORE M. PEEPER
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 
 


 



 



SMITH, PRESIDING JUDGE, DISSENTING:


¶1 I disagree with the majority's conclusion that Gerhart's message was protected speech. In Oklahoma, blackmail includes a written communication, made with the intent to compel another to do an act against his will, which threatens to either (a) accuse the person of conduct tending to degrade and disgrace him, or (b) expose a fact, report or information which would in any way subject the person to the ridicule or contempt of society. 21 O.S.2011, § 1488 (emphasis added). Gerhart sent an email to Senator Branan demanding that he ensure a particular bill was heard and passed. If it was not, Gerhart stated, he would make Branan "the laughing stock of the Senate", would "dig into your past, yoru [sic] family, your associates and once we start on you there will be no end to it. This is a promise." Gerhart's communication explicitly threatened to dig into the lives of Branan and his family, in order to disgrace him and expose him to ridicule, if Branan did not do what Gerhart wanted.

¶2 The majority admits that speech integral to criminal conduct is not protected by the First Amendment. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498, 69 S.Ct. 684, 688-89, 93 L.Ed.2d 834 (1949). Gerhart's communication clearly meets the statutory requirement for blackmail. In finding that this is not enough to support his conviction, the majority adds two unwritten requirements to § 1488. First, the majority claims that speech is protected under the First Amendment unless it constitutes a true threat of violence. In Virginia v. Black, the United States Supreme Court found that a statute prohibiting cross-burning was permissible because the First Amendment allows States to punish expression which inflicts injury, is likely to provoke a violent reaction, incites a breach of the peace or imminent lawless action, or constitutes a true threat of violence. 538 U.S. 343, 359, 123 S.Ct. 1536, 1548, 156 L.Ed.2d 535 (2003). Nothing in Black suggests that the State cannot prohibit communication as blackmail if the speech does not include an act of unlawful violence, and the Supreme Court has not so held in any other case. To do so, as the majority does, eviscerates the scope and protection afforded by the law against blackmail. The majority also suggests that Gerhart's threat was mere political hyperbole, or political speech, relying on Watts v. United States, 394 U.S. 705, 88 S.Ct. 1389, 22 L.Ed.2d 664 (1969). On the contrary, the factual differences between this case and Watts underscore why Gerhart's speech was not protected. Watts told a small group of people at a rally that, if he had to carry a rifle, the first man in his sights would be the President. Watts, 394 U.S. at 706, 89 S.Ct. at 1401. The Supreme Court found that, given the conditional nature of the threat, its audience and the circumstances, this was protected political speech. 394 U.S. at 708, 89 S.Ct. at 1401-1402. By contrast, Gerhart's threat was explicit rather than conditional and made directly to his intended victim.

¶3 Second, the majority states the blackmail charge was premature; the majority holds that a blackmailer's threat must specifically state exactly what facts or information he has and intends to use, and how he will use it, in exposing his victim to disgrace or ridicule. Nothing in the statutory language remotely supports a requirement for this level of specificity. The majority has, for no apparent reason, unnecessarily added this element to the crime. In so doing, the majority fails in our duty to construe the statutory language according to its plain and ordinary meaning, giving effect to the intention of the Legislature as expressed by the words actually included in the statute. State ex rel. Mashburn, 2012 OK CR 14, ¶ 11, 288 P.3d 247, 250. The Legislature could have required that a blackmailer specify what information he would use and how, but chose not to do so. Addition of this element has the effect of ensuring that Gerhart (and any other blackmailer who makes a specific threat without disclosing his information or projected course of action) is not guilty of blackmail.

¶4 Gerhart may or may not have been an irritant to Oklahoma lawmakers. However, in this communication he explicitly threatened one lawmaker, promising to investigate him and his family and expose him to ridicule, if the lawmaker did not ensure a bill was heard and passed. This conduct crosses the line from "irritant" to criminal conduct. The majority adds unwritten elements to the blackmail statute, then finds that because Gerhart's communication does not meet those elements it is protected speech. In doing so, the majority eviscerates Oklahoma's prohibition against blackmail. I believe this is neither required by First Amendment law nor expresses the will of the Oklahoma legislature. I dissent.

¶5 I am authorized to state that Judge Johnson joins in this dissenting opinion.


 


 



HUDSON, J., SPECIALLY CONCURS


¶1 I write separately to emphasize the context in which this case arose, i.e., political speech directed to a political actor in the political arena. Appellant sent an email to a state senator urging that a bill be heard, and passed out of, a legislative committee over which the senator presided as chairman. As Judge Lumpkin shows us, the elements of the Oklahoma blackmail statute are not met in this case and Appellant's convictions must be reversed and dismissed.

¶2 The purported victim in this case is a public figure. But more than that, he is an elected representative in the Oklahoma Legislature. Legislators and other public officials expect to receive "vehement, caustic, and sometimes unpleasantly sharp attacks[,]" Garrison v. Louisiana, 379 U.S. 64, 75, 85 S. Ct. 209, 216, 13 L. Ed. 2d 125 (1964) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964)), from the citizens they represent. That is the nature of elected public office. As Judge Lumpkin's opinion points out, evidence presented at trial show emails similar to the one sent by Appellant were received by the Senator as part of the normal course of legislative business.

¶3 The First Amendment does not require that constituents be rational, reasonable, kind or even polite in their communications with elected representatives and public officials. The First Amendment does require, however, that the people be heard on matters of public interest without threat of prosecution. Communications like the email at issue in this case receive the broadest possible First Amendment protections because they focus on citizen-led political change through the legislative process. The First Amendment guarantees "the freedom of speech . . . [and] the right of the people . . . to petition the Government for a redress of grievances." These rights are "implicit in '[t]he very idea of government, republican in form.'" McDonald v. Smith, 472 U.S. 479, 482, 105 S. Ct. 2787, 2789, 86 L. Ed. 2d 384 (1985) (quoting United States v. Cruikshank, 2 Otto 542, 92 U.S. 542, 23 L. Ed. 588 (1876)). The right to petition government officials was included in the First Amendment along with the guarantee of freedom of speech and freedom of press "to ensure the growth and preservation of democratic self-governance." Id., 472 U.S. at 489, 105 S. Ct. at 2793 (Brennan, J., concurring). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." Id. (quoting Garrison, 379 U.S. at 74-75, 85 S. Ct. at 216). "The First and Fourteenth Amendments embody our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" Garrison, 379 U.S. at 75, 85 S. Ct. at 216 (quoting Sullivan, 376 U.S. at 270, 84 S. Ct. at 721).

¶4 In this case, Appellant sought with his email merely to get a bill heard and passed out of a legislative committee. Appellant's email does not amount to blackmail under Oklahoma law. Rather, it represents legitimate political activity. We must never allow the Oklahoma blackmail statute to become a sword used to suppress mere political speech or communications of this type with elected public officials. The First Amendment forbids it, especially when the message--or the messenger--are unpopular or controversial. See Citizens United v. Federal Election Comm'n, 558 U.S. 310, 340, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753 (2010) ("Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints."). I therefore concur in reversing and dismissing Appellant's convictions.


 

 

 







 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2012 OK CR 8, 281 P.3d 1283, MURPHY v. STATE
Discussed
 2012 OK CR 14, 288 P.3d 247, STATE v. STICE
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2000 OK 2, 995 P.2d 1124, 71 OBJ 111, Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1488, Blackmail
Discussed at Length
 21 O.S. 1958, Using Access to Computers to Violate Oklahoma Statues - Penalty
Discussed